**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CRUZ BAYLON and MARIA CARMEN BAYLON,

       Plaintiffs,

v.                                Civil Action No.:  1:12-cv-00052-MCA-KBM

WELLS FARGO BANK, N.A.; and
MCCARTHY & HOLTHUS, LLP
d/b/a MCCARTHY, HOLTHUS & LEVINE,

       Defendants.


**DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSE TO PLAINTIFFS'**
**MOTION TO COMPEL**

       Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), through its undersigned counsel, hereby files its Response to Plaintiffs' Second Motion to Compel (Doc. 65), and states as follows:

## INTRODUCTION

       Plaintiffs Cruz and Maria Carmen Baylon (the "Baylons") moved to compel Wells Fargo to provide information regarding their mortgage loan account, including information seeking to substantiate the Baylons' groundless assertions that Wells Fargo has destroyed records. Contrary to the histrionic charge in the motion that Wells Fargo engaged in a "scorched earth" litigation strategy that includes "destruction of virtually all records related to its collection of the discharged debt" Wells Fargo has produced voluminous records in this matter constituting over 732 documents, including written records of hundreds of telephone calls, audio recordings and even a video recording. The exhibits to the plaintiffs' motion are replete with citations to some of

these records. See, e.g., Motion, p.5, citation to transcript of telephone call produced by Wells Fargo at Bates number 0654. The Baylons have taken no depositions of any Wells Fargo employees to substantiate their claim of document destruction; instead, they equate imagined or minor gaps in the written records to destruction or willful withholding of relevant documents. The Court should deny the motion to compel for the complete failure of plaintiffs to provide any substantiation of its charges of document destruction and for the reasons set out below.

## The Disputed Discovery

The Baylons seek a court order to compel Wells Fargo to produce policies, procedures, training material, recordings, screen capture images and documents concerning payments and assignments of the promissory note.  Further, the Baylons seek an order compelling Wells Fargo to respond to Requests for Admissions Nos. 1, 2 and 4 and Interrogatories Nos. 15, 17, 18 and 19.

Requests for Admissions 1 and 2 ask Wells Fargo to admit to communications and instructions it gave to its foreclosure counsel.  Wells Fargo objected to these Requests for Admission on the grounds they seek information that is protected by the attorney-client privilege. Interrogatory No. 15 requests Wells Fargo to explain any denial of the Requests for Admission and provide identities of witnesses who can testify concerning the denial.  Interrogatories Nos. 17 and 18 request Wells Fargo to explain why Wells Fargo demanded payment of the debt and how many times it demanded payment on the debt.  Wells Fargo fully responded to these Interrogatories.  Interrogatory No. 19 requests Wells Fargo to disclose who decided to seek a deficiency judgment.  Wells Fargo objected to this Interrogatory on the grounds it seeks information protected by the attorney-client privilege.

## ARGUMENT

**I.   Wells Fargo Did Not Destroy Evidence**

Wells Fargo has not destroyed evidence.  The Baylons have no evidence of such destruction beyond their own expectations and guesses.  For example, the Baylons have taken no depositions of Wells Fargo employees to even attempt to establish facts to support their accusations.   In contrast, Wells Fargo has provided the Baylons with voluminous records regarding the Baylons' mortgage account, including detailed records of the dates, times, and content of numerous telephone calls regarding the mortgage loan account. Samples of these records of telephone calls are attached for illustration purposes as **Exhibit 1.**  These telephone calls are the supposed factual basis for the allegations in the plaintiffs' complaint of wrongful debt collection activity (in fact they rebut plaintiffs' claims of any wrongful collection activity, but that will be argued at a later time). Plaintiffs merely suppose that destruction has occurred. For this reason alone, the motion should be denied.  The party moving to compel discovery must prove that the opposing party's answers are incomplete. *Daiflon Inc. v. Allied Chemical Corp.,* 534 F.2d 221, 227 (10th Cir.1976).

A.   Wells Fargo Did Not Destroy Bankruptcy Records

The Baylons suggest that Wells Fargo destroyed documents because there have not been records produced from Wells Fargo's bankruptcy department.  The reason the Baylons have not been provided with any records from the bankruptcy department is because those records apparently never existed.   Additionally, Wells Fargo is not withholding "Potential Release Reports," "Batman spreadsheet," or "BKRREL log" because the loan was never routed to the bankruptcy department.  The Baylons' bankruptcy discharge was entered prior to the time when Wells Fargo began servicing the loan.  *See* Discharge Order and Welcome Letter attached at

**Exhibit 2.**  When the loan was transferred from its prior servicer to Wells Fargo on September 1, 2010, the loan was apparently not flagged to indicate the Baylons had a prior bankruptcy or a bankruptcy discharge and therefore the bankruptcy department apparently was not involved with this loan.   Since the bankruptcy department was not involved with this loan, there is no information concerning the Baylons' loan in the "LPS/MPS," "Batman," "Hogan'" or "AIS" programs and systems.  "Lack of evidence showing that a producing party is in fact in possession of a document is grounds to deny a motion to compel." *See Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 8 (D.D.C. 2010); *See also Van Kampen High Yield Mun. Fund v. O'Donnell & Naccarato*, 2003 WL 751005, *3 (E.D. Pa. Mar. 4, 2003) (Judge denying a motion to compel when there was no evidence to the contrary that the defendants had produced all documents).

Further, since the bankruptcy department was not involved in this loan, there apparently is no record of calls to the bankruptcy department and faxes received from Perla Baylon or the Baylons' bankruptcy attorney.  Moreover, the assertion that the bankruptcy department must have recorded and kept records of calls that have not been produced (motion, p.5), because one of the collection department telephone call recordings produced by Wells Fargo ended when the Baylons were transferred to the bankruptcy department is nothing more than pure speculation. It supposes that there is some obligation to record every customer telephone call, which there is not, and that Wells Fargo destroyed the record of the transferred call, which it did not. Typical of the assertions in plaintiffs' motion, it assumes a lack of records to be evidence of willful destruction, a charge that plaintiffs level, without taking even one deposition to attempt to support their speculation.

B.  <u>Wells Fargo Did Not Destroy Records of Calls Between Wells Fargo and the Baylons</u>

Wells Fargo acknowledges that the Baylons' have not been provided several months of loan servicing activity.  Wells Fargo began servicing the Baylons' loan on or about September 1, 2010.  The earliest date on the consolidated notes log provided to the Baylons is March 3, 2011.  *See* excerpt from the consolidated notes log attached hereto as **Exhibit 3**.  After a diligent search, these notes have now been located.  Undersigned counsel received a copy of these notes yesterday and will provide them to the Baylons by the end of this week as the documents need to be reviewed for privilege and a privilege log needs to be prepared.

C.  <u>Wells Fargo Did Not Destroy Records Showing It Obtained The Baylons' Credit Reports</u>

Wells Fargo has not destroyed records showing that is requested the Baylons' credit reports.  In fact, Wells Fargo admitted that it obtained the Baylons' credit report on September 27, 2010.  Wells Fargo does not have records that it obtained the Baylons' credit report on other occasions.  This does not mean that Wells Fargo did not obtain the Baylons' credit report on other dates; it means that after a diligent search, it does not have notes of doing so in its system.  The fact that Wells Fargo admitted to obtaining the Baylons' credit report on one occasion shows that Wells Fargo is not trying to hide or destroy evidence.  Therefore, the Baylons' motion to compel should be denied as to this issue.

**II.  <u>Relevant Training Materials, Policies and Procedures Will Be Produced</u>**

Wells Fargo has not withheld any training materials, policies or procedures in bad faith.  Wells Fargo does not object to producing materials policies and procedures regarding relevant collection activity subject to the protective order in place.  However, Wells Fargo has not located a relevant collection policy in effect during the relevant time period.  Wells Fargo has already produced the bankruptcy manual.  Wells Fargo did not wrongfully withhold sections of the

manual.  It produced the relevant information it has been able to locate for the relevant time period.   Moreover, Wells Fargo did not produce a poor quality version of the bankruptcy policies and procedures intentionally and did not realize the Baylons considered the version they received to be poor quality until the Baylons filed their motion to compel.  They did not consult on this issue ahead of time and apparently, the electronic copy provided was unclear.   Wells Fargo has sent today a hard copy of the bankruptcy policies and procedures which resolves this issue.

## III.   <u>Limited Screen Captures Are Available and Are Being Prepared For Disclosure</u>

Wells Fargo has no "screen capture images" other than one video file that requires redactions before it can be produced.  The beginning of the video shows another Wells Fargo borrower's personal, confidential information that cannot be disclosed under federal privacy law. The redaction process for a video is complex and Wells Fargo requires additional time to remove the highly confidential and personal information of its other customer before it can be disclosed. Therefore, the Baylons' motion to compel should be denied with respect to this issue.

## IV.   <u>Wells Fargo Owned the Note Prior To The Baylons' Default</u>

Wells Fargo owned the Baylons' promissory note prior to the Baylons' default in May 2009.  Wells Fargo provided the Baylons a copy of the promissory note with endorsements showing transfers of the note and a copy of the "MERS Milestones" which clearly demonstrates the chain of ownership of this promissory note.  *See* a copy of the promissory note and the MERS Milestones attached as **Exhibit 4 and Exhibit 5 respectively.** The MERS Milestone record is of the mortgage industry's methods of transferring, and tracking transfers of, the beneficial ownership of promissory notes and loan servicing.  However, the Baylons speculate that there must be additional information regarding assignment of the promissory note in Wells

Fargo's records or that the loan was placed into a pool of loans backing a mortgage backed security. Again, this speculation that is not backed up by any deposition testimony or any other evidence.

Further, Wells Fargo located Karen M. Cochrane, the woman who signed the endorsement of the promissory note from Accredited Home Lenders, Inc. to Wells Fargo Bank, N.A. *See* Ex. 4. Ms. Cochrane's contact information has been disclosed to the Baylons. Ms. Cochrane has confirmed to Wells Fargo that it is her signature on the promissory note endorsement and has confirmed that the latest possible date she could have endorsed the promissory note was prior to the Baylons' default. Additionally, the MERS Milestone shows that once Wells Fargo obtained ownership in the promissory note, it was not transferred to any other person or entity, including any pool of mortgages. Taken together, this evidence is fatal to the claim of a breach of the Fair Debt Collection Practices Act ("FDCPA"). Therefore, the Baylons' motion to compel should be denied as to this issue.

## V.   Wells Fargo Objects To Requests For Admission Nos. 1 and 2 Because They Seek Privileged Information.

Wells Fargo objects to responding to Requests for Admissions Nos. 1 and 2 because they seek information that is protected by the attorney-client privilege. Specifically, Request for Admission No. 1 requests Wells Fargo to admit that it informed its foreclosure counsel that the debt was discharged in bankruptcy. This request seeks Wells Fargo to admit to content of its privilege communication to its foreclosure counsel. *See Murphy v. Gorman*, 271 F.R.D. 296, 304 (D.N.M. 2010)(Attorney-client privilege protects confidential communications between the attorney and the client made for the purpose of providing legal services). Similarly, Request for Admission No. 2 requests Wells Fargo to admit it instructed its foreclosure counsel to seek a

deficiency judgment in the foreclosure proceeding.  Both of these requests seek privileged information.  Wells Fargo incorporates by reference its arguments concerning privilege contained in its Response to Plaintiffs' Motion to Compel Wells Fargo to Answer Written Discovery (Document No. 49).  Therefore, the Baylons' motion to compel should be denied as to this issue.

## VI.   Wells Fargo Was Unable To Verify The Existence Of The Baylons' Bankruptcy

Wells Fargo was told by the Baylons that they were in bankruptcy and this is reflected in records produced.  However, when Wells Fargo investigated the Baylons' bankruptcy, it was unable to verify the existence of the bankruptcy discharge. *See* email from Matthew Brobston attached as **Exhibit 6.**  In one instance, Wells Fargo informed the Baylons that the bankruptcy appeared to have been dismissed rather than discharged. *See* excerpts from the May 5, 2011 telephone call with Perla Baylon at p.4, line 8 attached as **Exhibit 7**. The records produced illustrate the mistaken conclusion that there was not a bankruptcy. The Baylons can inquire further beyond the details shown in the records produced by deposition. The records produced show the persons who checked the bankruptcy records, the dates of the bankruptcy check and other details. *See* **Ex 6.** Again, any details beyond what is shown in the records may be sought by taking deposition testimony. Therefore, the Baylons' motion to compel should be denied as to this issue.

## VII.   Wells Fargo Answered The Questions Concerning Collection Of The Account

Wells Fargo fully answered Interrogatories Nos. 17 and 18, which request that Wells Fargo explain why it demanded payments of the discharged debt and disclose how many times it demanded payment of the discharged debt. The question assumes that Wells Fargo did in fact demand payment of the discharged debt in violation of the bankruptcy discharge, when Wells

Fargo denies the premise contained in the question that it did so.  Wells Fargo responded that it did not demand payment of the discharged debt (there is no evidence in any of the voluminous records produced of Wells Fargo's employees threatening to sue Mr. Baylon personally); instead, it sought to collect the monthly mortgage  payments in order to avoid having to foreclose on the real property security for the debt. The Bankruptcy Code contains a specific provision allowing a mortgage lender to contact the borrower for this purpose:

> Subsection (a)(2) [the discharge injunction] does not operate as an injunction against an act by a creditor that is the holder of a secured claim if (1) such creditor retains a security interest in real property that is the principal residence of the debtor; (2) such act is in the ordinary course of business between the creditor and the debtor; and (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

Bankruptcy Code 11§ 524(j).

After reviewing the voluminous records of telephone calls between Wells Fargo and the Baylons that have been produced to the Baylons, it is clear that Wells Fargo's calls and contacts with the Baylons were designed to try to avoid a loss of the home by the Baylons through foreclosure, by offering them the opportunity to make the monthly payments in lieu of foreclosure. This is specifically permitted under bankruptcy code section 11 § 524(j). Additionally, the monthly statements that were sent to the Baylons make clear that the monies sought are sought to avoid foreclosure.  *See* mortgage statements attached as **Exhibit 8** ("The foreclosure process may have already started on your property.  If you want to retain your home, please pay the full reinstatement amount owed immediately").  Plaintiffs refuse to accept Wells Fargo's responses because the answers are not in accord with their mistaken theories of liability. However, this is not grounds for the plaintiffs to try to compel an answer more to their liking. *See Drum v. Brimer*, 22 F. Supp. 2d 1224, 1226 (D. Kan. 1998)(The court denied a motion to

compel because the plaintiff's disagreement with the answer he received in discovery is not a basis for granting a motion to compel an answer the plaintiff desired).  Therefore, the Baylons' motion to compel should be denied as to this issue.

## VIII.  Wells Fargo Objects to Responding to Interrogatory No. 19 Because It Seeks Privileged Information

Wells Fargo objected to Interrogatory No. 19 on the grounds it seeks information protected by the attorney-client privilege.  Specifically, Interrogation No. 19 requests Wells Fargo to disclose who decided to seek a deficiency judgment in the foreclosure matter.  The decision to seek a deficiency judgment necessarily involved a communication between Wells Fargo and its foreclosure counsel.  Therefore, that information is protected by the attorney-client privilege.  *See Murphy v. Gorman*, 271 F.R.D. 296, 304 (D.N.M. 2010).  Therefore, the Baylons' motion to compel should be denied as to this issue.

## CONCLUSION

This Court should deny the Baylons' motion to compel. The plaintiffs engage in speculation that Wells Fargo destroyed evidence or documentation regarding this matter and the Baylons' loan.  The information the Baylons assert was destroyed apparently never existed or, as to the gap in servicing records  has been now located and will be produced in the next few days.

Additionally, Wells Fargo has not acted in bad faith by withholding policies, procedures and training material from the Baylons.  Wells Fargo has provided the Baylons with the relevant bankruptcy policies and procedures for the relevant time period.  If additional relevant collection policies are located for the relevant time period, they will be produced.   Additionally, the Baylons will receive the one screen capture Wells Fargo has available concerning when the redactions are completed from the video recording, a task estimated to be completed in mid-December.

10

Moreover, Wells Fargo has provided the Baylons with all available information regarding Wells Fargo's ownership of the promissory note.  Wells Fargo has provided a copy of the MERS Milestone as well as the contact information for the women who endorsed the promissory note. This information provides the Baylons with the date that Wells Fargo obtained an ownership in the promissory note and shows that the promissory note has not been transferred to any other person or entity after Wells Fargo obtained ownership.   The loan apparently was not "securitized" and plaintiffs can explore this subject more in deposition testimony if they question it.

Further, Requests for Admissions Nos. 1 and 2 and Interrogatory No. 19 all seek information protected by the attorney-client privilege.   The information sought by these discovery requests require Wells Fargo to disclose information it communicated to and received from its foreclosure counsel.  Disclosure of this information is protected by the attorney-client privilege doctrine.

Regarding Interrogatory Nos. 17 and 18, Wells Fargo has responded to those Interrogatories.   That the plaintiffs do not like the answer because it does not support their mistaken theory of the case is not a reason to compel Wells Fargo to change its answer.

Lastly, Wells Fargo was unable to verify the Baylons' bankruptcy.  Wells Fargo has produced an email that shows the investigation done by Wells Fargo to determine whether the Baylons' debt was discharged in bankruptcy.  For these foregoing reasons, the Court should deny the Baylons' motion to compel.

Dated this 15th day of November, 2012.

BLOOM MURR ACCOMAZZO & SILER, PC

*/s/ Daniel R. Delaney*

By: _____

Daniel R. Delaney, Esq.
Bloom Murr Accomazzo & Siler, PC
410 Seventeenth Street, Suite 4200
Denver, Colorado 80202
TEL:  (303) 534-2277
FAX:  (303) 534-1313
*ddelaney@bmas.co*

~and~

Larry J. Mantano
Holland & Hart LLP
110 N Guadalupe, Suite 1
Post Office Box 2208
Santa Fe, New Mexico 87505
*lmontano@hollandhart.com*

**ATTORNEYS FOR WELLS FARGO**

## CERTIFICATE OF SERVICE

I hereby certify that this 15th day of November, 2012 I served the foregoing document electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Charles S. Parnall
*cparnall@nmconsumerwarriors.com*

Richard N. Feferman
*rfeferman@msn.com*

Matthew Silverman
*msilverman@mhlevine.com*

*/s/ Larry J. Montaño*

_____

Larry J. Montaño

5852421_1.DOC