IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRUZ BAYLON and
MARIA CARMEN BAYLON,

    Plaintiffs,

v.                                     CIV 12-0052 MCA/KBM

WELLS FARGO BANK, N.A. and
MCCARTHY & HOLTHUS, LLP
d/b/a MCCARTHY, HOLTHUS & LEVINE,

    Defendants.

**ORDER COMPELLING McCARTHY & HOLTHUS' DISCOVERY RESPONSES
AND SANCTIONING McCARTHY & HOLTHUS FOR DISCOVERY ABUSES**

    THIS MATTER comes before the Court on two Motions – first, Plaintiffs' Motion to Compel McCarthy & Holthus to Answer Written Discovery *(Doc. 36)* and second, Plaintiffs' Rule 37 Motion Against McCarthy & Holthus *(Doc. 68)*. Having reviewed the parties' submissions and the relevant law, I find both motions are well-taken and should be granted.

**I.    BACKGROUND**

    Plaintiffs' Complaint arises from Defendants' alleged attempts to collect a debt that was discharged in bankruptcy. Defendant McCarthy & Holthus ("McCarthy") is the law firm retained by the creditor, Wells Fargo Bank, N.A. ("Wells Fargo"), to collect the debt.

    Plaintiffs served their first set of discovery requests upon McCarthy on April 25, 2012, and have yet to receive proper responses. McCarthy does not dispute that it failed to serve timely responses, which would have been due May 28, 2012. On May 29, 2012, the day after their responses were due, McCarthy requested a one-week extension. On

June 5, 2012, McCarthy requested a second extension of two days. Although McCarthy requested Plaintiffs to provide an electronic version of their discovery requests on June 7, 2012, McCarthy did not respond to the discovery requests until June 20, 2012 – nearly three weeks past the second extended deadline.

Immediately after receiving McCarthy's delinquent responses, Plaintiffs prepared a letter dated June 21, 2012, detailing the deficiencies in the responses. One such deficiency was McCarthy's repeated assertion of privilege without providing a privilege log or any information by which Plaintiffs, or the Court, could evaluate the existence of any privilege. On June 26, 2012, McCarthy agreed to supplement the majority of its responses and provide a privilege log. McCarthy also agreed to produce records of its search to determine whether Plaintiffs' debt had been affected by bankruptcy.

When McCarthy failed to supplement as agreed on June 26, Plaintiffs spoke to alternative personnel at McCarthy on July 17 and received yet another promise to supplement discovery, including a privilege log and bankruptcy search records. McCarthy agreed to an extension of Plaintiffs' July 18 deadline to file a motion to compel.

Plaintiffs again were not satisfied with McCarthy's discovery responses, finally served on July 19, 2012, and they filed the pending Motion to Compel *(Doc. 36)* on August 2, 2012. The Motion takes issue with McCarthy's responses to Interrogatory Nos. 3, 9, 10, 11, and 12 and Request for Production ("RFP") Nos. 3, 4, and 10. In response, McCarthy advised the Court that for most part, it does not oppose Plaintiffs' position. McCarthy did object, however, to RFP No. 4, *see Doc. 50* at 1, which seeks any contracts or agreements relating to this case between McCarthy and Wells Fargo. *See*

2

*Doc. 37-3* at 10.  McCarthy contends that the documents responsive to RFP No. 4, namely the retainer agreement, are protected from disclosure on the grounds of attorney-client privilege and attorney work product.  *See generally Doc. 51*.

As to the remaining discovery requests, McCarthy represented that it had "been assembling the answers to Interrogatories Nos. 3 and 9-12 and Requests for Production Nos. 3 and 10 pursuant to the letter and agreement of the parties previously and has been compiling this information for Plaintiffs."  *See Doc. 50* at 1.  Despite that agreement and representation to the Court, McCarthy did not supplement its discovery responses as promised, requiring Plaintiffs to file a second Motion, this time requesting sanctions, on October 23, 2012.  *See Doc. 68*.  In response to the Motion for Sanctions, McCarthy argues "almost all the requests for discovery by the Plaintiffs contained items that were prepared for Wells Fargo, thereby invoking the Attorney/Client Privilege."  Doc. 72 at 2.  It further contends that the delay in producing documents has been due to its efforts "to preserve Wells Fargo's right to assert the privilege."  *Id.* at 3.

Plaintiffs point out that Wells Fargo was copied on its initial discovery requests to McCarthy, as well as the briefing on the underlying Motion to Compel *(Doc. 36)*.  Likewise, Wells Fargo received copies of McCarthy's September 4, 2012 responses, in which McCarthy agreed to withdraw all of its objections.  At no point did Wells Fargo object to the production of the requested documents.  Moreover, Plaintiffs indicate that McCarthy has failed to provide even basic discovery information, such as its documentation regarding the Plaintiff's file or identification of witnesses.

## II.   LEGAL STANDARD

### A.   Attorney-Client Privilege

Federal courts follow state law in cases based upon state causes of action. *See* FED. R. EVID. 501; *White v. American Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990) (holding that when a "case [is] based upon a state cause of action, state law controls the determination of privileges"). In federal question cases, however, principles of common law as interpreted by the federal courts govern. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995). The present case includes federal claims arising under the Fair Debt Collection Practices Act and state claims arising under the New Mexico Unfair Practices Act and New Mexico common law. *See Doc. 1* at 8-9. Because the parties do not assert to which claims the requested documents are most relevant, the Court might ordinarily be expected to make the determination. *See, e.g., Sellers v. Wesley Med. Ctr., L.L.C.*, Case No. 11-1340-JAR-KGG, 2012 WL 5362977 at *3 (D. Kan. Oct. 31, 2012) (noting that where the parties did not indicate whether the evidence at issue related to the state or federal claims, the court would attempt to make this determination).

In the present case, however, regardless whether the Court employs state or federal law, the attorney-client privilege does not apply to agreements of the kind requested in RFP No. 4. The Tenth Circuit has found "[i]t is well recognized in every circuit, including our own, that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege." *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990)[1]. There are three major

---

[1] *Accord Lawfinders Assocs., Inc. v. Legal Research Ctr., Inc.*, 193 F.3d 517, 1999 WL 706182 at *3 (5th Cir. 1999) (noting that the privilege is limited to "communications related to the rendition of *legal* advice," and "financial transactions between the attorney and client are not within the privilege" (emphasis in original) (internal citations omitted)); *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege."); *In re Grand Jury Proceedings*, 841 F.2d 230,

exceptions to this general rule. *See id.* (noting the legal advice exception, the last link exception, and the confidential communications exception). Two of these exceptions apply only in the criminal context, and are therefore inapplicable here. *See id.* at 1489 (noting the legal advice exception applies where the client seeks advice about the very activity for which the fee information is sought and the last link exception applies where the disclosure of the client's identity would provide the last link in a chain of evidence likely to lead to indictment). The third applies only where the retainer or fee agreement itself contains confidential information. *See id.* at 1492-93 (remanding case for *in camera* determination whether the fee agreements contain confidential information).

### B. Attorney Work Product

Federal law governs the work product doctrine in federal court, even in diversity cases based upon state causes of action. S*ee, e.g., Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). Courts are specifically required to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B).

There is no Tenth Circuit case law determinative of the question whether a representation or fee agreement between an attorney and his client qualifies as attorney work product. At least one District Court within the Circuit has held that such

---

233 n. 3 (8th Cir. 1988) ("Absent special circumstances, … fee arrangements are not confidential professional communications protected by the attorney-client privilege.").

agreements typically do not. *See Gipson v. Southwestern Bell Tel. Co.*, Civil Action No. 08-2017-EFM-DJW, 2009 WL 790203 at *12 (D. Kan. Mar. 24, 2009), *overruled on other grounds*, 2009 WL 4157948 (D. Kan. Nov. 23, 2009). *Gipson* cites persuasive authority from outside the Tenth Circuit in support of its conclusion. *See Murray v. Stuckey's Inc.*, 153 F.R.D. 151, 153 (N.D. Iowa 1993) and *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 303 (3rd Cir. 1999) (citing same). The District Court for the Northern District of Iowa has noted that attorney fee arrangements made at the outset of a representation normally do not contain mental impressions of the attorney such that work product protection should apply. *See Murray*, 153 F.R.D. at 153 n. 2.

### B. Sanctionable Conduct in Discovery

When the Court grants a motion seeking to compel discovery,

> [T]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5). The Court may avoid such an order of sanctions if the opposing party's response was substantially justified or if the sanctions are otherwise unjust. *See id.*

Plaintiffs seek harsher sanctions in the present case. *See Doc. 69 at 4 (requesting Rule 37(c) sanctions). Where a party fails to properly supplement its discovery responses or admit facts as requested, the court may order reasonable expenses, including attorney's fees, caused by the failure as well as more severe sanctions, up to and including dismissal of the litigation. FED. R. CIV. P. 37(c).

III.  ANALYSIS

There are two issues before the Court.  First, with regard to Plaintiff's Motion to Compel *(Doc. 36)*, I must determine whether Plaintiffs are entitled to information responsive to their Interrogatory No. 4, which seeks "all contracts or agreements between Wells Fargo and McCarthy related to [the Plaintiffs' account]."  *Doc. 37-3* at 10.  Second, I must decide whether Plaintiffs are entitled to sanctions based on McCarthy's conduct in discovery.

> A.  **McCarthy Has Waived Any Objection to Interrogatory No. 4, Which Seeks Relevant and Admissible Information Not Subject to Any Privilege.**

McCarthy has demonstrated disregard of its discovery obligations and the Federal Rules of Civil Procedure by failing to properly respond to Plaintiff's discovery by the second extended deadline.  The fact that McCarthy missed its second extended discovery deadline by nearly three weeks indicates it was not a calendaring error or some other inadvertent mistake.  This failure, in and of itself, constitutes a waiver of any privilege that might apply, despite authority that indicating that such waiver should generally not be imposed merely upon a party's failure to object within the time provided by the federal rules.  *See Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 662 (D. Colo. 2000).

Here, in addition to not responding to discovery within the initial discovery period, McCarthy's responses languished for an additional 20 days and, when finally received, failed to provide any factual basis for the alleged attorney-client privilege and work product protection.  Like the defendant in the *Pham* case, McCarthy failed to make its claim of privilege expressly and describe the nature of the documents, communications, or things not produced or disclosed in a manner that will enable other parties to assess the

7

applicability of the privilege. *See* FED. R. CIV. P. 26(b)(5). Moreover, as shown below, I find no basis for the asserted attorney-client privilege or work-product protection to apply.

McCarthy has made no effort to claim that the documents responsive to RFP No. 4 contain confidential communications that would be protected by the attorney-client privilege. In response to Plaintiffs' Motion *(Doc. 36)*, McCarthy makes bald assertions, unsupported by any facts or law. It merely asserts, without further comment, that the retainer agreement "is protected under the attorney client privilege" and that it would "[c]learly . . . fall under the attorney client privilege protection." So sparse is McCarthy's argument concerning the attorney-client privilege that I at first thought McCarthy had waived it, preferring to focus on its work-product objection. Given the lack of argument by McCarthy as to any exception to the general rule that such agreements are not subject to privilege, I find that the requested documents are not covered by the attorney-client privilege and must be produced.

I further find that the documents responsive to RFP No. 4 are not subject to protection as attorney work product. The work product doctrine was conceived in order to protect the lawyer's mental processes developed for a specific case. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("Proper preparation of a client's case demands that [the lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.") Documents produced in the regular course of business, even by attorneys, do not automatically qualify as attorney work product. *See Hickman v. Taylor*, ("We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases."). *Accord In re Grand Jury Proceedings*, 156

8

F.3d 1038 1042 (10th Cir. 1998) (declining to extend attorney work product protection to documents prepared in the course of ordinary business); *In re Grand Jury Proceedings*, 727 F.2d 941, 945 (10th Cir. 1984) (declining to protect attorney files from grand jury's subpoena where they were not prepared in anticipation of litigation).

  Here, McCarthy admits the requested document is "an agreement between the parties in reference to the filing of judicial actions on behalf of the Defendants." *Doc. 51* at 2. Because the document concerns multiple potential actions, and there is no indication of any specific reference to this case or the Baylons, I cannot find that it is protected by the work product doctrine. *See Gipson v. Southwestern Bell Tel. Co.*, Civil Action No. 08-2017-EFM-DJW, 2009 WL 790203 at *12 (D. Kan. Mar. 24, 2009) (finding that fee agreement with attorneys is not subject to work product doctrine absent some reference to the attorney's advice or legal conclusions or opinions), *overruled on other grounds*, 2009 WL 4157948 (D. Kan. Nov. 23, 2009).

  **B. Sanctions Are Appropriate Given McCarthy's Conduct.**

  Plaintiffs in this case attempted to negotiate with McCarthy in good faith at several points prior to filing their Motion to Compel *(Doc. 36)*, let alone the instant Motion for Sanctions *(Doc. 68)*. They granted McCarthy's requests for extension of time to respond to discovery even though McCarthy's responses were already late. Plaintiffs then waited patiently for three weeks beyond the extended discovery deadline to receive McCarthy's responses. Thereafter, Plaintiffs properly wrote to McCarthy, setting forth their perceived insufficiencies in those responses. Multiple times, starting June 26, 2012, Plaintiffs were promised full and complete responses. It was not until October 11, 2012, the date when McCarthy's key witness was deposed, that McCarthy advised Plaintiffs that its discovery

responses may not be forthcoming as promised.  Significantly, the discovery period in this case was set to close on November 2, 2012 and was only extended on October 31, 2012, due in no small measure to McCarthy's conduct.

The Court finds McCarthy's conduct unacceptable and finds that sanctions are required in order to ensure McCarthy's future compliance with discovery.  Plaintiffs are therefore awarded their attorney fees and other expenses in the preparation of their Motion for Sanctions *(Doc. 68)*.  At this point, I will not consider more severe sanctions, but McCarthy is hereby notified that further sanctions, including a recommendation for dismissal of this action, will be considered in the event that it causes future delays of this nature.

Wherefore**,**

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel *(Doc. 36)* is **granted**. McCarthy must produce all documents responsive to Request for Production No. 4 within ten (10) days of this order.

**IT IS FURTHER ORDERED** that Plaintiff's Rule 37 Motion *(Doc. 68)* is **granted**. McCarthy is hereby ordered to produce any and all documents responsive to the remainder of Plaintiff's first set of discovery requests and, further, to pay Plaintiffs' expenses, including attorney's fees, associated with the preparation and prosecution of its Rule 37 Motion. *(Doc. 68)*.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE