IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRUZ BAYLON and
MARIA CARMEN BAYLON,

    Plaintiffs,

v.                                                       CIV 12-0052 MCA/KBM

WELLS FARGO BANK, N.A. and
MCCARTHY & HOLTHUS, LLP
d/b/a MCCARTHY, HOLTHUS & LEVINE,

    Defendants.

## ORDER COMPELLING WELLS FARGO'S DISCOVERY RESPONSES

THIS MATTER comes before the Court on Plaintiffs' Motion to Compel Wells Fargo to Answer Written Discovery *(Doc. 38)*, filed August 2, 2012 and fully briefed on October 3, 2012. *See Docs. 38, 39, 49, 59, 61*. Having reviewed the parties' submissions and the relevant law, I find the Motion is well-taken in part and should be granted in part.

**I.    BACKGROUND**

Plaintiffs' Complaint arises from Defendants' alleged attempts to collect a debt that was discharged in bankruptcy. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is allegedly a debt collector under the Fair Debt Collection Practices Act ("FDCPA"). *See Doc. 1* at ¶ 6. Defendant McCarthy & Holthus ("McCarthy") is the law firm retained by Wells Fargo to collect Plaintiffs' debt. *See id.* at ¶ 7. The debt in question arises out of the Baylon's mortgage loan, which was discharged in bankruptcy on January 25, 2010. *See id.* at ¶ 13. According to Plaintiffs, the discharge of their mortgage debt renders Defendants' efforts to collect payments unlawful. *See generally id.* Plaintiffs bring the instant action under the FDCPA and the New Mexico Unfair Practices Act and New Mexico common law. *See id* at 8-9.

II.     **LEGAL STANDARDS**

    A.     **A Defendant's Past Conduct May Be Relevant to a Punitive Damages Claim Where Similar to Harm That Occurred in the Present Case.**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). It is well settled that a defendant's prior instances of similar conduct are relevant to a claim for punitive damages. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 and 577 (1996) (recognizing first that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct," and second that "repeated misconduct is more reprehensible than an individual instance of malfeasance"). To be relevant, however, defendant's prior conduct must bear a relationship to the harm allegedly suffered by the plaintiffs in the case at bar. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.").

    B.     **The Attorney-Client Privilege and Work Product Doctrines.**

Federal courts follow state law of privilege in cases based upon state causes of action. *See* FED. R. EVID. 501; *White v. American Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990) (holding that when a "case [is] based upon a state cause of action, state law controls the determination of privileges"). In federal question cases, however, it is principles of common law as interpreted by the federal courts that govern. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995). The present case includes federal claims arising under the Fair Debt Collection Practices Act ("FDCPA") and state claims arising under the New Mexico Unfair Practices Act and New Mexico common law. *See Doc. 1* at 8-9. Because the parties do not assert to which claims the requested documents are most relevant, the Court may be expected to

make the determination. *See, e.g., Sellers v. Wesley Med. Ctr., L.L.C.*, Case No. 11-1340-JAR-KGG, 2012 WL 5362977 at *3 (D. Kan. Oct. 31, 2012) (noting that where the parties did not indicate whether the evidence at issue related to the state or federal claims, the court would attempt to make this determination).

Whether state or federal law governs, the basic contours of the attorney-client privilege are the same. Under federal law, protected documents and information are those that contain "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (citations and quotations omitted). Such communications "must relate to legal advice or strategy sought by the client." *Id.* Communications from the attorney to the client are also protected to the extent that they consistitute legal advice or tend to reveal the client's confidences. *Id.* Likewise, New Mexico requires four elements to establish the attorney-client privilege: "(1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client." *S.F. Pac. Gold Corp. v. United Nuclear Corp.*, 175 P.3d 309, 315 (N.M. Ct. App. 2007) (noting that New Mexico's privilege is "almost identical" to proposed FED. R. EVID. 503(b)).

Federal law governs the work product doctrine in federal court, even in diversity cases based upon state causes of action. S*ee, e.g., Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). Courts are specifically required to "protect against

3

disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B).

### III. ANALYSIS

#### A. The Information Requested in Interrogatory No. 8, as Voluntarily Limited by Plaintiffs, is Relevant to Plaintiffs' Punitive Damages Claim.

In their first set of written discovery to Wells Fargo, served April 25, 2012, Plaintiffs asked for information regarding "other lawsuits, claims to government agencies, claims to the Better Business Bureau or similar entity, or complaints to law enforcement in the last five years, regarding Wells Fargo's debt collection practices." *See Doc. 39-2 at 2 (Interrogatory No. 8).* In subsequent correspondence with Wells Fargo, Plaintiffs limited this request to claims arising from a debt discharged in bankruptcy and, further, to information going back only three years instead of the originally requested five. *See Doc. 59-2.*

As set forth herein, federal courts have long recognized the relevance of the defendant's prior, similar misconduct to claims for punitive damages. I find that Plaintiffs' voluntary limitations upon Interrogatory No. 8 adequately ensure that the information provided is sufficiently similar to Wells Fargo's alleged misconduct in the present case such that it falls within the broad scope of discovery. Of course, Chief Judge M. Christina Armijo may ultimately see fit to set further limits on any such evidence ultimately admitted at trial. In the discovery phase, however, I find that Wells Fargo must produce the requested information as to previous lawsuits, complaints or other claims asserting that Wells Fargo sought to collect a debt discharged in bankruptcy, from January 1, 2009 through the date of Plaintiff's Complaint in this matter, January 18, 2012.

Although Wells Fargo objects to producing information responsive to Interrogatory No. 8 on the grounds that it would be overly burdensome, it has not adequately demonstrated its

4

alleged burden. *See Doc. 49* at 3 (asserting simply that "it is self-evident that compliance with the request would be extremely time-consuming and costly effort [sic] looking only at the losses associated with the allocation of Wells employees to the task"). Likewise, Wells Fargo has not substantiated its objection that the requested information is equally available to Plaintiffs. To the contrary, Wells Fargo admits that should it be compelled to respond, "it would be forced to do so by searching through all internal files it may possess." *See id.* at 4. Even if some of the responsive information may be accessible to Plaintiffs from third parties, Wells Fargo has more experience in these matters and better information more readily available to it simply by consulting its staff and its attorneys. Under these circumstances, I cannot find that the burden of responding to Interrogatory No. 8, as limited herein, outweighs the benefit of the information. *See* Fed. R. Civ. P. 26(b)(2)(C).

Although Wells Fargo also objects to Interrogatory No. 8 on the grounds that it seeks information subject to the attorney-client privilege and/or work product doctrine, Plaintiffs have clarified that the request seeks "information about actions that Wells Fargo took, not its discussions with its attorneys behind the actions." *See Doc. 59* at 2. Such information is not subject to protection as confidential attorney-client communication or attorney work product. Similarly, Wells Fargo objects on the grounds that some of the responsive information may contain private information regarding other Wells Fargo customers. *See Doc. 49* at 7. The Court notes that Plaintiffs have agreed that to whatever extent responsive information is not a matter of public record, it would be subject to the stipulated confidentiality order already entered in this case. *See Doc. 49* at 6 (referencing *Doc. 31*). Quite simply, Wells Fargo's objections are overruled; it must produce information responsive to Interrogatory No. 8, as limited herein, within thirty (30) days of this Order.

> **B.     Wells Fargo Has Waived Any Privilege to a Portion of the Information Requested in RFP Nos. 1 and 3.  The Remainder of the Requested Information Must Be Submitted, Together With a More Complete Privilege Log, for *In Camera* Review.**

In Request for Production ("RFP") No. 1, Plaintiffs sought "all documents identified, referenced, or relied upon by Wells Fargo in responding to [Plaintiffs'] Interrogatories and Requests for Admission." *Doc. 39-2* at 6.  In RFP No. 3, Plaintiffs asked for "all documents regarding the collection of the Account by Wells Fargo." *Id.* at 8.

Although Wells Fargo produced some documents in response to RFP Nos. 1 and 3, Plaintiffs contend that the production is meaningless because "Wells Fargo redacted virtually all of the meaningful information," including "everything it did and everything it knew when it was attempting to collect the discharged debt" and "all notes made by its foreclosure department." *Doc. 59* at 7.  Wells Fargo maintains that the withheld documents and redacted information otherwise responsive to RFP Nos. 1 and 3 constitute privileged information. *See Doc. 49* at 7.  To that end, Wells Fargo prepared a privilege log regarding 51 pages of documents from its Servicing Notes and Consolidated Notes. *See Doc. 39-3*.  The privilege log does not identify, by either name or title, the authors of the subject documents or individuals to and from whom the documents were sent and/or distributed. *See id.*  As a result, the Court is unable to assess whether any privilege exists and requires more complete information from Wells Fargo.

For instance, Documents Bates-numbered Baylon/Wells 018, 019, and 020 contain redactions described merely as "entries by Home Eq" containing or referencing "legal advice from in-house legal department." *See Doc. 39-3* at 1-2.  As Plaintiffs' point out, Home Eq is the prior servicer of the Plaintiffs' mortgage, *see Doc. 39* at 6, and it is not a party to this lawsuit.  Wells Fargo contends that Home Eq was its agent at the time the documents or entries were prepared and is therefore covered by the attorney-client privilege. *See Doc. 49* at 9.  However, it

6

is not clear from Wells Fargo's privilege log whether the "in-house counsel" referenced was counsel to Wells Fargo or merely counsel for Home Eq.

Additionally, it appears that the Home Eq entries and documents Bates-numbered Baylon/Wells 037-039 have already been produced to Plaintiffs. *See Doc. 39* at 8. It is Plaintiffs' contention that this production constitutes a waiver of any privilege. *See id. See also United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990) (collecting caselaw affirming that even inadvertent disclosures by a party constitute waiver of the attorney-client privilege). Wells Fargo argues that because the inadvertent disclosure was made by its attorneys, co-defendant McCarthy, the Court should find the privilege in tact. *See Doc. 49* at 10. *See also Ryans*, 903 F.2d at 741, n.13 (noting that inadvertent disclosure by counsel does not waive privilege). Documents produced by Plaintiffs indicate that Wells Fargo produced the subject documents in discovery in the previous foreclosure action. *See Doc. 59-4* at 2.

FED. R. EVID. 502(c) governs waiver of privilege for documents that were inadvertently produced, as here, in a state court proceeding. It states that such a disclosure is not a waiver in federal court "if the disclosure would not be a waiver in a federal proceeding or is not a waiver under the law of the state where the disclosure occurred." Case law from within the Tenth Circuit indicates that Wells Fargo's delay in seeking to rectify its disclosure may well constitute waiver in a federal proceeding. *C.f. United States v. Koerber*, Case No. 2:09-cr-302 CW, 2011 WL 2174355 at *6 (D. Utah June 2, 2011) (finding that a party's act of asking opposing counsel to set-aside potentially privileged information on the same day the party learned of the inadvertent disclosure, followed by a Motion for Protective Order filed within four months of opposing counsel's challenge to the privilege, was sufficiently prompt to preserve the privilege). In contrast to the facts of *Koerber*, Wells Fargo has never requested the return of the allegedly

7

privileged documents in the present case and did not assert that the disclosure was inadvertent until nearly two months after Plaintiffs first argued the privilege had been waived. *See Doc. 59* at 7.

Wells Fargo fares no better under New Mexico case law regarding waiver of privilege. New Mexico courts consider the circumstances of the inadvertent waiver, including

> the reasonableness of the precautions taken to preven inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; (5) whether the overriding interests of justice would be served by relieving a party of its error.

*Hartman v. El Paso Natural Gas Co.*, 763 P.2d 1144, 1152 (N.M. 1988) (quotation omitted). It is Wells Fargo's burden to substantiate its claim of privilege, including that the privilege has not been waived. Here, Wells Fargo has not met its burden. Further, Wells Fargo's failure to promptly assert privilege or seek the return, at any point to date, of the alleged inadvertent disclosures adequately demonstrates waiver. Accordingly, I find that Wells Fargo must produce unredacted versions of documents Bates-numbered Baylon/Wells 018-020 and 037-039.

As to the remaining documents identified on Wells Fargo's privilege log, I will require Wells Fargo to prepare a complete privilege log, including identifying information as to the individuals who prepared the subject documents and all individuals to whom the documents were distributed. The revised privilege log must be provided to counsel and delivered to my chambers together with copies of the documents for *in camera* review within ten (10) days of this order.

  **C.**  **The Information Requested in RFP No. 5 Is Not Privileged And Must Be Produced.**

In RFP No. 5, Plaintiffs sought "all contracts and agreements between Wells Fargo and McCarthy related to the Account." *Doc. 39-2* at 10. "It is well recognized in every circuit, including our own, that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege." *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990)[1]. Although no Tenth Circuit case law is determinative of the question whether a representation or fee agreement between an attorney and his client qualifies as attorney work product, at least one District Court within the Circuit has held that such agreements typically do not. *See Gipson v. Southwestern Bell Tel. Co.*, Civil Action No. 08-2017-EFM-DJW, 2009 WL 790203 at *12 (D. Kan. Mar. 24, 2009), *overruled on other grounds*, 2009 WL 4157948 (D. Kan. Nov. 23, 2009). Based upon these authorities, I find that documents responsive to RFP No. 5 are neither privileged nor do they constitute attorney work product.

Originally Wells Fargo made privilege and work product objections in response to Plaintiffs' discovery requests. It has apparently retreated from this position and no longer contends that its agreement with McCarthy & Holthus contains any specific confidential attorney-client communications or the mental impressions of an attorney. *See Doc. 49* at 11-12. Its privilege log does not contain any reference to the subject agreement. *See Doc. 39-3*. Instead, Wells Fargo's primary argument in response to Plaintiffs' Motion to Compel is that the agreement is not relevant. *See Doc. 49* at 11-12. To this end, Wells Fargo notes that much of

---

[1] *Accord Lawfinders Assocs., Inc. v. Legal Research Ctr., Inc.*, 193 F.3d 517, 1999 WL 706182 at *3 (5th Cir. 1999) (noting that the privilege is limited to "communications related to the rendition of *legal* advice," and "financial transactions between the attorney and client are not within the privilege" (emphasis in original) (internal citations omitted)); *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege."); *In re Grand Jury Proceedings*, 841 F.2d 230, 233 n. 3 (8th Cir. 1988) ("Absent special circumstances, . . . fee arrangements are not confidential professional communications protected by the attorney-client privilege.").

the case law evaluating whether such an agreement is privileged or work-product-protected is associated with class actions. *See id.* at 12.

I find Wells Fargo's arguments unpersuasive. Contrary to Wells Fargo's assertion, the respective rights and duties of Wells Fargo and its attorneys, co-Defendant McCarthy, are highly relevant in this case, where a key issue is whether and when Defendants knew, or should have known, that Plaintiffs' debt was discharged in bankruptcy. Wells Fargo must therefore produce documents responsive to RFP No. 5 within ten (10) days of this Order.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Wells Fargo to Answer Written Discovery *(Doc. 38)* is **granted in part**. Wells Fargo must produce documents responsive to RFP No. 5, unredacted versions of documents Bates-numbered Baylon/Wells 018-020 and 037-039, and a complete privilege log to counsel with a copy of the log and the allegedly privileged documents to my chambers for *in camera* review within ten (10) days of this Order. Further, within thirty (30) days of this Order, Wells Fargo must produce documents and information responsive to Interrogatory No. 8 as limited herein. In all other respects, the motion is **denied**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE