IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRUZ BAYLON and
MARIA CARMEN BAYLON,

    Plaintiffs,

v.                                                                CIV 12-0052 MCA/KBM

WELLS FARGO BANK, N.A. and
MCCARTHY & HOLTHUS, LLP
d/b/a MCCARTHY, HOLTHUS & LEVINE,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
PLAINTIFFS' SECOND MOTION TO COMPEL
WELLS FARGO'S DISCOVERY RESPONSES**

THIS MATTER comes before the Court on Plaintiffs' Second Motion to Compel Wells Fargo to Answer Written Discovery *(Doc. 65)*, filed October 22, 2012 and fully briefed on December 17, 2012. *See Docs. 65, 74, 77, 78.* Having reviewed the parties' submissions and the relevant law, I find the motion is well-taken in part and should be granted in part, as explained herein.

**I.    BACKGROUND**

Plaintiffs' Complaint arises from Defendants' alleged attempts to collect a debt that was discharged in bankruptcy. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is allegedly a debt collector under the Fair Debt Collection Practices Act ("FDCPA"). *See* Doc. 1 at ¶ 6. Defendant McCarthy & Holthus ("McCarthy") is the law firm retained by Wells Fargo to collect Plaintiffs' debt. *See id.* at ¶ 7. The debt in question arises out of the Baylon's mortgage loan,

which was discharged in bankruptcy on January 25, 2010.  *See id.* at ¶ 13.  According to Plaintiffs, the discharge of their mortgage debt renders Defendants' efforts to collect payments unlawful.  *See generally id.*  Plaintiffs bring the instant action under the FDCPA and the New Mexico Unfair Practices Act and New Mexico common law.  *See id* at 8-9.

## II.     LEGAL STANDARD

### A.     Scope of Discovery

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  FED. R. CIV. P. 26(b)(1).

Within these limits, a party is entitled to an admission or denial of any matters within the scope of discovery.  *See* FED. R. CIV. P. 36(a)(1).  "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  FED. R. CIV. P. 36(a)(4).

### B.     Attorney-Client Privilege

Federal courts follow state law in cases based upon state causes of action.  *See* FED. R. EVID. 501; *White v. American Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990) (holding that when a "case [is] based upon a state cause of action, state law controls the determination of privileges").  In federal question cases, however, principles of common law as interpreted by the federal courts govern.  *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995).

2

The present case includes federal claims arising under the Fair Debt Collection Practices Act and state claims arising under the New Mexico Unfair Practices Act and New Mexico common law. *See Doc. 1* at 8-9. Because the parties do not assert to which claims the requested documents are most relevant, the Court may make the determination. *See, e.g., Sellers v. Wesley Med. Ctr., L.L.C.*, Case No. 11-1340-JAR-KGG, 2012 WL 5362977 at *3 (D. Kan. Oct. 31, 2012) (noting that where the parties did not indicate whether the evidence at issue related to the state or federal claims, the court would attempt to make this determination).

### C. Sanctionable Conduct in Discovery

When the Court grants a motion seeking to compel discovery,

> [T]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5). The Court may avoid such an order of sanctions if the opposing party's response was substantially justified or if the sanctions are otherwise unjust. *See id.* When a party fails to properly supplement its discovery responses or admit facts as requested, the court may order reasonable expenses, including attorney's fees, caused by the failure as well as more severe sanctions, up to and including dismissal of the litigation. FED. R. CIV. P. 37(c).

### III. ANALYSIS

Plaintiffs contend that Wells Fargo has failed to appropriately respond to a number of discovery requests. *See Doc. 65* at 1 (alleging deficiencies with

responses to Interrogatory Nos. 10, 11, 15, 17, 18, and 19; Request for Productions Nos. 3, 7, 8, 9, 10, 13, 14, and 15; and Request for Admission Nos. 1, 2, and 4). Wells Fargo believes it has fully responded to Interrogatory Nos. 15, 17, 18, and 19 as well as Requests for Admission 1 and 2. *See Doc. 74* at 3.

### A. The Court Will Not Presently Entertain Allegations that Wells Fargo Improperly Destroyed Documents.

Plaintiffs filed the instant Motion not only to complain of incomplete discovery responses but also to "ask this Court to order Wells Fargo to provide the date and circumstances surrounding its destruction of the vast majority of its records concerning the Baylons' account." *Doc. 66* at 2. Plaintiffs do not provide the Court with evidence or convincing argument that any records were actually destroyed. Instead, they assume that since records they expected to exist have not been produced, such records must have been destroyed. Wells Fargo contends it "has not destroyed evidence" in this case. *Doc. 74* at 3. Moreover, Wells Fargo indicates that Plaintiffs "have taken no depositions of Wells Fargo employees to even attempt to establish facts to support their accusations." *Id.*

Spoliation of evidence is a serious allegation, one which must be supported by some evidence in order to merit the Court's attention. *See, e.g., Energy West Mining Co. v. Oliver*, 555 F.3d 1211, 1220 n.2 (10th Cir. 2009) ("[I]n civil litigation, we require a showing of 'intentional destruction or bad faith' before issuing a spoliation instruction permitting the jury to draw an adverse inference from the destruction of evidence."). Discovery and litigation in general are arduous enough without the injection of unsupported allegations of misconduct. Both parties are cautioned to refrain from such conduct as this case progesses.

4

### B. Wells Fargo Must Fully Respond to Request for Admission No. 4; However, the Information Sought in Request for Admission Nos. 1 and 2 is Privileged.

In Request No. 4, Wells Fargo is asked to admit that it knew, before filing its Foreclosure Complaint against the Plaintiffs, that the Debt had been discharged in bankruptcy. *See Doc. 66-7* at 2. In response, Wells Fargo denied Request No. 4, stating that "[a]ccording to its loan servicing records, Wells Fargo was under the mistaken understanding that there had not been a bankruptcy by the Baylons prior to the foreclosure complaint." *Id.* Not only do Plaintiffs fail to articulate any argument as to why Wells Fargo's response to Request No. 4 is inadequate, but I find the response to be acceptable under the applicable law. No further response from Wells Fargo is required as to Request No. 4.

In Request No. 1, Wells Fargo is asked to admit that it "informed McCarthy that the debt was discharged in bankruptcy." *See Doc. 66-7* at 1. In Request No. 2, Wells Fargo is asked to admit that it "instructed McCarthy to seek a deficiency judgment in the Foreclosure." *Id.* at 2. Wells Fargo objects to both requests on the grounds that they seek information protected by the attorney-client privilege. *See id.* at 1-2.

Generally, the content of Wells Fargo's communications to McCarthy, as its counsel, is protected under both state law and federal common law. *See* Rule 11-503 NMRA 2012 ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."); *Torres v. Toback, Bernstein & Reiss LLP*, 278 F.R.D. 321, 322-23 (E.D.N.Y.

5

2012) (describing federal common-law privilege as "strictly confined within the narrowest possible limits" and noting that, unlike state law of privilege, "only communications 'by the client' qualify for protection"). However, the attorney-client privilege does not protect against disclosure of facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). *C.f. Stern v. O'Quinn*, 253 F.R.D. 663. 687 (S.D. Fla. 2008) ("If a document constitutes protected work product, the party possessing the document generally need not produce it—even if the document contains only factual information. However, because the work product privilege does not protect the facts in that document (the privilege protects documents, not facts), the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories.").

Request for Admission Nos. 1 and 2 focus not on the underlying fact—i.e., whether Wells Fargo knew that the Plaintiffs' debt had been discharged—but instead on what Wells Fargo told its attorneys at McCarthy. Accordingly, these Requests seek the content of privileged communications rather than facts, and Wells Fargo need not respond further to either.

### C.   Wells Fargo Must Explain Its Answers to Requests for Admission as Requested in Interrogatory No. 15.

Plaintiffs' Interrogatory No. 15 asks Wells Fargo, for any request for admission that it denied, to "state in detail the reasons for the denial, including all facts and the identities of all witnesses whose testimony is expected to support

6

the denial." *Doc. 66-7* at 3.  For each witness identified, Plaintiffs further asked Wells Fargo to provide the substance of the witness' testimony.  *See id.*

Request for Admission No. 4 asked Wells Fargo to admit that it knew of the Baylons' bankruptcy and discharge of the mortgage debt before it filed the Foreclosure Complaint against them.  *See id.* at 2.  Wells Fargo denied Request for Admission No. 4, stating that, "[a]ccording to its loan servicing records, Wells Fargo was under the mistaken understanding that there had not been a bankruptcy by the Baylons prior to the foreclosure complaint." *Id.*  In answer to Interrogatory No. 15 concerning Request for Admission No. 4, Wells Fargo essentially restated its response to Request for Admission No. 4.  *See id.* at 2-3.  Wells Fargo did not disclose any facts concerning its investigation or review of loan servicing records, and it did not identify any witnesses whose testimony was expected to support the denial.  *See id.* at 3.

Wells Fargo has not adequately responded to Interrogatory No. 15 concerning its response to Request for Admission No. 4.  Wells Fargo similarly failed to provide an adequate response to Interrogatory No. 15 concerning Request for Admission Nos. 5, 6, 8, 9, 10, 11, 12, 13, 15, 16, and 17.  None of its answers includes any reference to a specific fact or identifies a single supporting witness.  *See id.*  Moreover, Wells Fargo did not object to Interrogatory No. 15, so it has waived any and all objection to answering fully.  Wells Fargo must respond completely within fourteen (14) days of this Order.

7

### D. Wells Fargo Must Respond Fully to Interrogatory Nos. 17, 18, and 19.

In Interrogatory Nos. 17, 18, and 19, Plaintiffs asked relatively simple factual questions to which Wells Fargo either provided no objection or provided an unfounded objection. Each of these interrogatories seeks information squarely within the scope of discovery and must be answered in full.

Interrogatory No. 19 asks "who decided to seek a deficiency judgment in the Foreclosure." *See Doc. 66-7* at 5. Wells Fargo objected to answering on the grounds that the answer is somehow protected by the attorney-client privilege. Plaintiffs did not request information concerning Wells Fargo's reasons for seeking a deficiency judgment or any other information that might reveal confidential attorney-client communications. The simple identity of the individual who decided to go forward with a deficiency judgment is a fact that is not protected from discovery by the attorney-client privilege. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with an attorney.").

Interrogatory Nos. 17 and 18 ask, respectively, why Wells Fargo demanded payment on the Debt after it was discharged in bankruptcy and how many times Wells Fargo demanded such payment between January 26, 2010 and August 24, 2011. *See Doc. 66-7* at 4. In its answers, Wells Fargo declines to provide the requested information based on semantics. It argues that it never "demanded payment of the Debt," but instead "sought periodic payments associated with the recorded mortgage." *See id.* This is a distinction without a

8

meaningful difference for purposes of discovery. Wells Fargo does not deny that it sought payment of some kind from the Baylons for some purpose. Moreover, Wells Fargo did not object to Interrogatory Nos. 17 or 18. It must provide the requested information as to why and how many times such requests were made, and it must do so within fourteen (14) days of this Order.

> E. **Wells Fargo Must Produce Its Internal Policies and Procedures.**

In Interrogatory Nos. 10 and 11, Plaintiffs ask Wells Fargo to identify and describe its policies concerning, respectively: (1) the collections of debts that have been, or that a consumer claims to have been, discharged in bankruptcy; and (2) to assure that collectors do not attempt to collect debts that have been discharged in bankruptcy. *See Doc. 66-10* at 2. Plaintiffs also requested copies of Wells Fargo's internal policies, including: (a) all documents that concern training provided to Wells Fargo's employees for collection of consumer accounts (RFP No. 7); (b) all policies in effect on September 1, 2009 or thereafter pertaining to procedures to investigate whether a debt had been discharged in bankruptcy (RFP No. 9); and (c) all policies, procedures, guidelines, instructions, and training materials pertaining to what Wells Fargo expected its collectors to do to document their telephone calls, which were in effect for the time period from September 1, 2009 to August 24, 2011 (RFP No. 13). Wells Fargo withdrew its initial objections and responded to each of these requests with the following statement:

> Wells Fargo is investigating whether [this information] between the time of the discharge of the underlying debt and the filing of the foreclosure lawsuit

9

>concerning the subject matter of this lawsuit is available. Wells Fargo is presently engaged in gathering such information. To the extent that such information is available, Wells Fargo will provide [the documents] responsive to this request.

*Id.* In answer to Plaintiffs' Motion to Compel *(Doc. 65)*, Wells Fargo represented that it had already sent "a hard copy of the bankruptcy policies and procedures which resolves this issue." *See Doc. 74* at 6. However, by the time Plaintiffs filed their Reply about a month later, Plaintiffs still had not received the requested policies and procedures. *See Doc. 77* at 1.

I find the requested materials entirely within the scope of discovery, and I will require Wells Fargo, to the extent it has not already done so, to produce them. In making this production, I will further request Wells Fargo's attorneys to ensure that Wells Fargo has produced its internal policies—whether commonly referred to as policies, procedures, guidelines, or by any other name—without regard to whether they were developed or released during what Wells Fargo has identified as the relevant time frame. If such policies were available to its personnel from September 1, 2009 to August 24, 2011, Wells Fargo must produce them. This Order includes Wells Fargo's entire collections manual and its entire bankruptcy manual.

## F. Wells Fargo Must Produce All Non-Privileged Documents Regarding the Baylons' Account.

Request for Production ("RFP") No. 3 seeks all documents regarding the collection of the Baylons' account, including eleven separate categories of documents, such as collection notes, call log, etc. *See Doc. 66-10* at 5. Wells Fargo objected to the requested subcategory of "all documents obtained from

10

information databases, including Lexis-Nexis, Accolaid, and credit reporting agencies" on the grounds that this subcategory was unduly vague and overly broad. *See Doc. 66-10* at 6. I disagree with Wells Fargo. To the extent that it performed searches on these or other similar databases relating to the Baylons' account during the relevant time period (September 1, 2009 through August 24, 2011), such documents are well within the scope of discovery and must be produced. Until and unless Wells Fargo comes forward with evidence, in the form of affidavits from individuals with knowledge, that the requested production is overly burdensome, I will require the information to be produced.

Also with respect to RFP No. 3, Wells Fargo notes that the subcategories of documents sent to and received from the creditor may contain privileged documents. I find that these subcategories appear to seek documents within the scope of discovery, and I will order them produced within fourteen (14) days of this Order. To the extent Wells Fargo believes that any documents included therein are privileged, it must prepare an adequate privilege log within fourteen (14) days of this Order. If Wells Fargo's responsive documents are included in the documents provided to the Court for *in camera* review pursuant to the Court's December 21, 2012 Order Compelling Wells Fargo's Discovery Responses *(Doc. 80)*, it must so state within fourteen (14) days of this Order.

RFP No. 8 seeks copies of all audio recordings of conversations Wells Fargo or its employees or agents had with any person regarding the Baylons' account. *See id.* at 7. Prior to October 22, 2012, Wells Fargo indicated it was engaged in gathering responsive information and would provide records

11

responsive to this request. *See Doc. 66-10* at 7. I find that RFP No. 8 is squarely within the scope of discovery, and will require Wells Fargo to produce all responsive recordings within fourteen (14) days of this Order.

RFP No. 10 seeks screen capture images, in color, of all information, including menus and subscreens, on Wells Fargo's computer system pertaining to the Account. *See id.* at 8. Wells Fargo objected to this request on the grounds that it is overly broad and unduly burdensome and seeks information not relevant to the parties' claims or defenses. I agree with Wells Fargo. Although some screen shots may ultimately prove to be relevant, RFP No. 10 must be reasonably narrowed. Without more information about Wells Fargo's computer system, I cannot tailor the request. I therefore suggest that counsel meet and confer to determine how best to proceed. I will require a report from counsel on this issue within fourteen (14) days of this Order.

RFP No. 14 requests all documents concerning payments to Wells Fargo in connection with a sale, assignment or other transfer of rights related to the Baylons' account. *See id.* at 10. RFP No. 15 asks for all agreements under which rights to any portion of the Baylons' account was assigned, sold, or otherwise transferred to any third party. *See id.* Wells Fargo objects to RFP Nos. 14 and 15 on the grounds that the requested information is not relevant to whether Wells Fargo qualifies as a "creditor" rather than a "debt collector" under the FDCPA and is therefore allegedly outside the scope of discovery. I disagree and find that the requested information is relevant and material to the parties' claims and defenses in this case. Specifically, I find that Wells Fargo's

production of MERS Milestones alone is not sufficient to satisfy these requests. Wells Fargo is therefore ordered to produce this information within fourteen (14) days of this Order. Given Wells Fargo's representation before October 22, 2012 that it was "in the process of searching for responsive, non-privileged documents within the scope of discovery related to the sale of the ownership or beneficial interest in the Baylons' Loan," I am certain there will be no further delays in production.

### F.  Plaintiffs Are Entitled To 75% of Their Attorneys' Fees and Costs Related to the Instant Motion to Compel.

The discovery disputes set forth in Plaintiffs' Motion have been ongoing for several months, yet the documents requested by Plaintiff remain largely unproduced. The Court finds Wells Fargo's delay unacceptable and finds that sanctions are required in order to ensure Wells Fargo's future compliance with discovery. Plaintiffs are therefore awarded 75% of their attorney fees and other expenses in the preparation of their Second Motion to Compel *(Doc. 65)*. Plaintiffs' fee award is limited in recognition of Wells Fargo's successful arguments in opposition to the Motion concerning Request for Admission Nos. 1, 2, and 4 as well as Request for Production No. 10. At this point, I will not consider more severe sanctions, but Wells Fargo is hereby notified that further sanctions will be considered in the event that it causes future delays of this nature.

**Wherefore,**

**IT IS HEREBY ORDERED** that Plaintiffs' Second Motion to Compel Wells Fargo *(Doc. 65)* is granted in part. Within fourteen (14) days of this Order, Wells

13

Fargo must produce documents and/or information responsive to Interrogatory Nos. 10 and 11; and Request for Production Nos. 3, 7, 8, 9, 13, 14, and 15.

**IT IS FURTHER ORDERED** that counsel for Plaintiffs and counsel for Wells Fargo must meet and confer within fourteen (14) days of this Order regarding Request for Production No. 10 in an effort to develop reasonable limits upon the scope of request or a plan by which such limits may be determined.

**IT IS FURTHER ORDERED** that Wells Fargo must pay 75% of Plaintiffs' reasonable expenses, including attorney's fees, associated with the preparation and prosecution of its Second Motion to Compel *(Doc. 65)*.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE