IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRUZ BAYLON and
MARIA CARMEN BAYLON,

    Plaintiffs,

v.                                          CIV 12-0052 MCA/KBM

WELLS FARGO BANK, N.A. and
MCCARTHY & HOLTHUS, LLP
d/b/a MCCARTHY, HOLTHUS & LEVINE,

    Defendants.

## ORDER ON *IN CAMERA* INSPECTION OF DISCOVERY RESPONSES TO REQUESTS FOR PRODUCTION 1 AND 3

THIS MATTER is before the Court for *in camera* inspection of certain documents responsive to Plaintiffs' Request for Production No. 1 and Request for Production No. 3 for which Defendant Wells Fargo Bank, N.A. ("Wells Fargo") claims attorney-client privilege and/or work-product protection. Having reviewed Wells Fargo's Restated and Amended Privilege Log, having conducted an *in camera* review of the provided documents, and having considered the parties' submissions and the relevant law, the Court finds that the documents in question need not be produced to Plaintiffs in this case with the exception of the redacted entries contained in Bates-numbered Baylon/Wells 027-028 and 091-093.

**I.    BACKGROUND**

Plaintiffs' Complaint arises from Defendants' alleged attempts to collect a debt that was discharged in bankruptcy. Wells Fargo is allegedly a debt collector

under the Fair Debt Collection Practices Act ("FDCPA").  *See Doc. 1* at ¶ 6. Defendant McCarthy & Holthus, LLP ("McCarthy") is the law firm retained by Wells Fargo to collect Plaintiffs' debt.  *See id.* at ¶ 7.  The debt in question arises out of Plaintiffs' mortgage loan, which was discharged in bankruptcy on January 25, 2010.  *See id.* at ¶ 13.  According to Plaintiffs, the discharge of their mortgage debt renders Defendants' efforts to collect payments unlawful.  *See generally id.*

## II. LEGAL STANDARD

### A. Scope of Discovery

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." FED. R. CIV. P. 26(b)(1).

### B. Attorney-Client Privilege

Federal courts follow state law in cases based upon state causes of action.  *See* Fed. R. Evid. 501; *White v. American Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990) (holding that when a "case [is] based upon a state cause of action, state law controls the determination of privileges").  In federal question cases, however, principles of common law as interpreted by the federal courts govern.  *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995). The present case includes both federal claims arising under the FDCPA and

2

state claims arising under the New Mexico Unfair Practices Act and New Mexico common law.  *See Doc. 1* at 8-9.

Whether state or federal law governs, the basic contours of the attorney-client privilege are consistent.  Under federal law, protected documents and information are those that contain "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (citations and quotations omitted).  Such communications "must relate to legal advice or strategy sought by the client."  *Id*.  Communications from the attorney to the client are also protected to the extent that they constitute legal advice or tend to reveal the client's confidences.  *Id.*

Likewise, New Mexico requires four elements to establish the attorney-client privilege: "(1) a communication; (2) made in confidence; (3) between privileged persons; (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client."  *S.F. Pac. Gold Corp. v. United Nuclear Corp.*, 175 P.3d 309, 315 (N.M. Ct. App. 2007) (noting that New Mexico's privilege is "almost identical" to proposed Fed R. Evid. 503(b)).

Federal law governs the work product doctrine in federal court, even in diversity cases based upon state causes of action.  *See, e.g., Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety,

3

indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).  Courts are specifically required to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed R. Civ. P. 26(b)(3)(B).

## III. ANALYSIS

In Request for Production No. 1 to Wells Fargo ("RFP No. 1"), Plaintiffs asked Wells Fargo to "[p]roduce all documents identified, referenced or relied upon by Wells Fargo in responding to Defendant's Interrogatories and Requests for Admission." *Doc. 39, Ex. B.* at 6.  Wells Fargo produced some responsive documents, but objected to the production of certain materials on the grounds of attorney-client privilege and work product protection.  *Id.* at 7.  In Request for Production No. 3 to Wells Fargo ("RFP No. 3"), Plaintiffs asked Wells Fargo to "[p]roduce all documents regarding the collection of the Account by Wells Fargo," including eleven categories of documents, such as collection notes, call log, documents transmitted to the creditor, documents received from the creditor, etc. *Doc. 39, Ex. B* at 8.  With respect to Plaintiffs' request for documents transmitted to and from the creditor, Wells Fargo objected and withheld portions of the responsive documents, claiming that they constituted communications protected by the attorney-client privilege or work product protection.  *Doc. 39, Ex. B* at 10.

Plaintiffs have maintained that Wells Fargo's production in response to RFP No. 1 and RFP 3 was essentially meaningless, because Wells Fargo's redacted "virtually all of the information" contained in its Consolidated Notes, making it "highly likely that non-privileged communications and facts have been

4

wrongfully redacted." *Doc. 39* at 5; *Doc. 59*, at 7.  Wells Fargo insists that it has only withheld privileged communications between it and its corporate attorneys or McCarthy, the law firm that represented it in the foreclosure action against Plaintiffs.  *Doc. 49,* at 8.

In its December 21, 2012 Discovery Order on Plaintiff's first motion to compel Wells Fargo, this Court concluded that Wells Fargo had waived the attorney-client privilege for portions of the documents requested in RFP No. 1 and RFP No. 3 through the inadvertent production of the documents in the state court foreclosure action.  *Doc.* 80.  As a result, the Court ordered Wells Fargo to produce to Plaintiffs unredacted versions of documents Bates-numbered Baylon/Wells 018-020 and 037-039.  *Doc. 80* at 8.  As to the balance of documents responsive to RFP No. 1 and RFP No. 3, the Court ordered Wells Fargo to prepare a "complete" privilege log,[1] identifying individuals who prepared the documents and individuals to whom they were distributed, and to deliver the log and documents to the Court for *in camera* review.  *Doc.* 80.

At a January 31, 2013 Status Conference, the parties discussed the outstanding issue of attorney-client privilege and work product protection for the documents withheld and/or redacted.  *Doc.* 99.  The parties presented limited argument regarding waiver of the attorney-client privilege, and the Court took the issue of privilege under advisement.  *Id.*

In its February 2, 2013 Discovery Order, addressing Plaintiff's Second Motion to Compel Wells Fargo, the Court ordered Wells Fargo to produce all

---

[1] The Court concluded that Wells Fargo's previous log was inadequate and left the Court unable to assess whether any privilege existed.  *Doc.* 80, at 6.  Wells Fargo has since amended its log and provided the court with its "Restated and Amended Privilege Log."

5

non-privileged documents responsive to RFP No. 3. *Doc. 105,* at 11. Additionally, to the extent that Wells Fargo maintained that privilege specifically protected the production of documents transmitted to and from the creditor about the collection of Plaintiffs' account, the Court ordered Wells Fargo to provide an "adequate" privilege log and any documents not previously provided for *in camera* review. *Doc. 105* at 11. Shortly after January 31, 2013, counsel for Wells Fargo provided the Court with both redacted and unredacted documents for its *in camera* review along with its Restated and Amended Privilege Log.

The Court has now performed its *in camera* review of the documents and is in a better posture to determine Wells Fargo's entitlement to the asserted privileges. The Court concludes that, with the exception of the redacted entries contained in Bates-numbered Baylon/Wells 027-028 and 091-093, all information withheld on the basis of attorney-client privilege or work product protection either qualifies for such privileges or is wholly irrelevant to the claims and defenses in this matter. The excepted documents, contained within Baylon/Wells 027-028 and 091-093, are not entitled to attorney-client or work product protection, because these particular communications were not made in order to facilitate or render legal assistance, nor were they prepared in anticipation of litigation.

Notably, Plaintiffs maintain that even for those communications that meet the elements of the attorney-client privilege and/or work production doctrine, Wells Fargo has waived its privileges in the following ways:  1) by providing an inadequate privilege log, 2) by disclosing privileged material to a separate corporate entity, and 3) by engaging in conduct that placed the communications

6

within the Crime-Fraud Exception. The Court will address each purported waiver in turn.

### A. INADEQUATE PRIVILEGE LOG

First, Plaintiffs argue that Wells Fargo waived any claim that it had to attorney-client privilege or work product protection by producing an inadequate privilege log. *Doc. 39* (citing *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007)). Plaintiffs note, for example, that Wells Fargo failed to state who created certain entries in the Consolidated Notes and to whom those entries were disclosed. *Doc. 39* at 7. Upon *in camera* review of the unredacted documents, the Court is satisfied that Wells Fargo's Privilege Log and the description of the communications therein were made in good faith, particularly given that many of the entries recorded by Vendorscape within the Consolidated Notes do not identify the person who created the entries or the people to whom they were disclosed.

### B. DISCLOSURE TO AFFILIATED CORPORATION

Next, Plaintiffs argue that Wells Fargo improperly withheld communications between Wells Fargo Home Mortgage, Inc. and McCarthy, because the disclosure of those communications to Wells Fargo necessarily destroyed any privilege. *Doc.* 39. While it is generally true that a party waives a privilege by voluntarily disclosing material to a third party, disclosure between affiliated corporations is often an exception. *See, e.g., Crabb v. KFC Nat'l Mgmt. Co.*, 952 F.2d 402, *3 (6th Cir. 1992) ("It is well settled that attorney-client privilege is not waived merely because the communications involved extend

7

across corporate structures to encompass parent corporations, subsidiary corporations, and affiliated corporations."); *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 472 (W.D. Mich. 1997) ("The universal rule of law, expressed in a variety of contexts, is that the parent and subsidiary share a community of interest, such that the parent (as well as the subsidiary) is the 'client' for purposes of the attorney-client privilege."). Here, Wells Fargo has represented, and Plaintiffs have not disputed, that Wells Fargo Home Mortgage is an operating division of Wells Fargo, not even a separately structured subsidiary. Based on this close corporate affiliation between Wells Fargo Home Mortgage and Wells Fargo, the Court agrees that the privilege was not waived simply because the subject communications between Wells Fargo Home Mortgage and McCarthy were disclosed to Wells Fargo.

### C. CRIME-FRAUD EXCEPTION

Finally, Plaintiffs argue that the subject communications fall within the Crime-Fraud Exception to the attorney-client privilege. Under this exception, the privilege "does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 562-63 (1989). According to Plaintiff, because communications between Wells Fargo and McCarthy were made in furtherance of a fraudulent and illegal attempt to force payment of a discharged debt, the communications therefore fall under the Crime-Fraud Exception to the attorney client privilege. *Doc. 39* at 10.

Wells Fargo maintains that Plaintiffs have failed to meet their burden to prove that the Crime-Fraud Exception applies. First, it notes that Plaintiffs have

not brought a cause of action for fraud against Wells Fargo or McCarthy. Second, it contends that Plaintiffs have not presented any evidence that the allegation of attorney participation in a crime or fraud has any foundation in fact. *Doc. 49* at 11 (citing *In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998)). While it is not clear that a party must bring a cause of action for fraud in order to enjoy the benefit of the Crime-Fraud Exception, it *is* clear that there must be a foundation in fact for the party's allegation that certain communications were in furtherance of a crime or fraud. See *Motley*, 71 F.3d at 1551.

Indeed, the party seeking application of the Crime-Fraud Exception must demonstrate the factual foundation even before *in camera* review of the relevant documents. See *United States v. Zolin*, 491 U.S. 554 (1989). In *Zolin*, the United States Supreme Court reasoned as follows:

> [b]efore engaging [in] *in camera* review to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support the good faith belief by a reasonable person," that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

*Zolin*, at 572.

Plaintiffs offer two facts, which they claim establish that Wells Fargo and McCarthy had actual knowledge of the discharge of Plaintiffs' debt in bankruptcy before they acted in concert to file a foreclosure action against them: 1) Plaintiffs sent a letter to Wells Fargo on June 30, 2011, (*see Doc*. 39, Ex. F), informing Wells Fargo that the subject debt had been discharged in bankruptcy; and 2) McCarthy represented that it conducts a bankruptcy search prior to accepting foreclosure cases. *Doc. 39* at 10. Based on these facts, Plaintiffs argue that

9

Wells Fargo and McCarthy proceeded with the underlying foreclosure action despite actual knowledge that the debt had been discharged in bankruptcy. *Id.* According to Plaintiffs, the subject communications between Wells Fargo and McCarthy were therefore made in furtherance of a "fraudulent and illegal" attempt to force payment of a discharged debt. *Id.* Plaintiffs predict that "[t]he communications that Wells Fargo seeks to protect are the communications that would expose the willfulness of its illegal conduct." *Id.*

In the Court's view, Plaintiffs' allegations and evidentiary showing, albeit far from conclusive, were at least adequate to support a good faith belief that an *in camera* review might reveal evidence to establish application of the Crime-Fraud Exception. Yet with the benefit of having performed the *in camera* inspection of the relevant documents, the Court now concludes that there is no substantiation of Plaintiffs' allegations of fraud sufficient to pierce the privilege veil.

Plaintiffs, relying upon *Irving Trust v. Gomez*, 100 F.R.D. 273, 277 (S.D.N.Y. 1983), urge the Court to expand the Crime-Fraud Exception to communications in furtherance of *tortious* conduct in addition to those in furtherance of a crime or fraud. *Doc. 59* at 89.

In *Irving Trust*, the Southern District of New York determined that the attorney and client there had engaged in intentionally or recklessly tortious behavior, by acting in concert to deprive the counterclaimant of the rightful use of his bank account funds even when they knew there were no grounds to do so. *Id.* at 277. As a result, the court compelled discovery of the subject

10

communications under the Crime-Fraud Exception. *Id.* Here, Plaintiffs assert that Wells Fargo and McCarthy engaged in tortious debt collection and violations of the New Mexico Unfair Practices Act, which sound in tort, and that such conduct places the subject communications within the Crime-Fraud Exception. *Id.* at 9.

While *Irving Trust* would seem to lend support to Plaintiffs' position that the Crime-Fraud Exception should be extended to tortious conduct, the Tenth Circuit has explicitly declined to so extend the exception. *See, e.g., Motley*, 71 F.3d at 1552 (rejecting the plaintiff's argument that the Crime-Fraud Exception should be extended to the tort of illegal racial discrimination and noting that "we have not extended the privilege to torts generally"). Likewise, the language of the relevant New Mexico Rules of Evidence provides no indication that the Crime-Fraud Exception should be extended to tortious conduct under New Mexico law. Rule 11-503(D)(1) provides that the attorney-client privilege does not apply "[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan what the client knew or reasonably should have known to be a crime or fraud." N.M.R.A. § 11-503(D). *Compare with* Kan. Stat. Ann. § 60-426(b) (providing that the attorney client privilege does not extend to communications if there is sufficient evidence that the communication was sought to enable or aid the commission or planning "of a crime *or a tort*") (emphasis added).

In sum, considering the allegations and evidentiary showing by Plaintiffs, and having performed an *in camera* inspection of the documents and entries for

which Wells Fargo asserts a privilege, the Court finds that Plaintiffs have failed to meet their burden to establish the application of the Crime-Fraud Exception.

## IV. CONCLUSION

For all of these reasons, the Court finds that the documents in question need not be produced to Plaintiffs in this case with the exception of the redacted entries contained in Bates-numbered Baylon/Wells 027-028 and 091-093.

**Wherefore,**

**IT IS HEREBY ORDERED** that within (14) days of this Order, Wells Fargo must produce to Plaintiffs the unredacted entries contained in Bates-numbered Baylon/Wells 027-028, 091-093.  With that limited exception, Wells Fargo need not produce the documents previously withheld on the basis of the attorney-client privilege and/or work product protection.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE