IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRUZ BAYLON and
MARIA CARMEN BAYLON,

      Plaintiffs,

v.                                  No. 12-CV-52 KG/KK

WELLS FARGO BANK, N.A.; and
MCCARTHY & HOLTHUS, LLP
d/b/a MCCARTHY, HOLTHUS & LEVINE,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

      Cruz Baylon and Maria Carmen Baylon ("the Baylons") filed a Complaint on January 18,

2012, against Wells Fargo Bank, N.A. ("Wells Fargo") and law firm McCarthy & Holthus, LLP

d/b/a McCarthy, Holthus & Levine ("McCarthy").  The Baylons allege violations of the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p (2012), and the New

Mexico Unfair Practices Act ("UPA"), NMSA 1978, §§ 57-12-1–57-12-26 (Repl. Pamp. 2000),

and for tortious debt collection.  Six motions are pending before the Court: 1) Defendant,

McCarthy & Holthus, LLP d/b/a McCarthy, Holthus & Levine's Motion for Summary Judgment

(Doc. 101); Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment Asserting,

Inter Alia, Lack of Subject Matter Jurisdiction (Doc. 120); Plaintiffs' Motion for Leave to File a

Surreply (Doc. 149); Wells Fargo Bank, N.A.'s Motion for Summary Judgment on Plaintiffs'

Claims for Tortious Debt Collection and Violation of the UPA (Doc. 208); Plaintiffs' Motion for

Partial Summary Judgment Against McCarthy (Doc. 210); and Plaintiffs' Motion for Partial

Summary Judgment Against Wells Fargo (Doc. 212).  Having considered all of the evidence

presented in this matter, the filings, and applicable law, the Court grants in part McCarthy's

motion for summary judgment and Wells Fargo's first motion for summary judgment to the extent the Defendants request dismissal of the Baylons' FDCPA claims. The Court finds that the Baylons' motion for leave to file a surreply is moot. Finally, the Court declines to exercise supplemental jurisdiction over the Baylon's state claims and therefore denies the remaining three motions. The Court dismisses the Baylons' FDCPA claims with prejudice and their UPA and tortious debt collection claims without prejudice.

A. *Factual and Procedural Background*

The facts outlined in this section are construed in the light most favorable to the Baylons as the nonmovants in the first two motions. *See Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

On May 30, 2007, Mr. Baylon signed a Promissory Note ("Note") with a principal amount of $132,300 due to Accredited Home Lenders, Inc., for a home located at 202 Yucca Drive Northwest, Albuquerque, New Mexico. (Doc. 120) Ex. A. The Note provided that Mr. Baylon would make payments on the first day of each month. (*Id.*) at 2. The Note stated, "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. . . . If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount." (*Id.*) at 3. In order to cure a past due payment, the Note required that "[i]f the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder [in the amount of] 5.000% of my overdue payment of principal and interest." (*Id.*) On the same day, both Baylons secured the Note by executing a mortgage encumbering the home. (Doc. 120) Ex. B.

The Note and mortgage were later assigned to Wells Fargo on September 10, 2007.  (*See* Doc. 120) Ex. G.  Accredited Home Lenders remained the servicer of the loan until July 14, 2008, when HomeEq Servicing became the servicer.  (Doc. 120) Ex. G.  In September 2007, Mr. Bayon failed to make his monthly payment until September 21.  (Doc. 133) Ex. B.  He also paid a late fee on the same date.  (*Id.*)  Mr. Baylon failed to make any payments—timely or otherwise—beginning May 2009.  (Doc. 120) Ex. C at 3.  The Baylons filed for Chapter 7 bankruptcy on August 26, 2009.  (Doc. 120) Ex. C at 4.  The Baylons received a bankruptcy discharge on January 25, 2010.  (Doc. 120) Ex. D at 2.  Wells Fargo became the loan servicer on September 1, 2010.  (Doc. 133) Ex. D.

Wells Fargo began calling the Baylons regarding the Note in September 2010. (Doc. 133) Exs. E, F.  Wells Fargo made approximately 350 calls to the Baylons between September 1, 2010, and September 1, 2011.  (Doc. 133) Ex. I.

On January 24, 2011, the Baylons' bankruptcy attorney faxed a letter to Wells Fargo stating that she represented the Baylons in their Chapter 7 bankruptcy and that the Baylons received a bankruptcy discharge on January 25, 2010.  (Doc. 133) Ex. H at 1-2.  The Baylons' attorney demanded that Wells Fargo stop "harassing my client and that all future communications . . . be handled through my office."  (*Id.*) When the calls continued, the Baylons' daughter, Perla Baylon, re-faxed the attorney's letter to Wells Fargo on April 27, 2011. (*Id.*)  Perla Baylon also spoke to a Wells Fargo representative on the telephone about the bankruptcy discharge.  (Doc. 133) Ex. G at 4-6.  The telephone calls continued after the second fax.  (*See* Doc. 133) Ex. J.

On May 14, 2011, McCarthy sent a letter addressed to Mr. Baylon stating, "Enclosed are the reinstatement figures you requested for the above referenced property.  The total amount due,

good through 06/12/2011, including attorney fees and costs is $37,145.82 . . . . Payments should

be made payable to Wells Fargo Home Mortgage and sent to our office . . . ."  (Doc. 102) Ex. E.

Mr. Baylon states that he did not request a reinstatement amount.  (Doc. 118) Ex. A.

On June 30, 2011, the Baylons sent Wells Fargo a letter by certified mail.  (Doc. 133) Ex.

H at 3.  Wells Fargo received the letter on July 5, 2011.  (*Id.*)  The Baylons stated in the letter

that they received a Chapter 7 bankruptcy discharge on January 25, 2010, and requested that

Wells Fargo cease all collections communication with them.  (*Id.*)

On August 24, 2011, Wells Fargo, through its foreclosure counsel, McCarthy, filed a

foreclosure complaint in New Mexico state court.  (Doc. 120) Ex. E.  The foreclosure complaint

contained the following request for relief: "That if the proceeds of the sale do not satisfy Wells

Fargo's judgment in full, Wells Fargo will have a deficiency judgment against the Defendant,

Cruz Baylon, for the deficiency.  No deficiency shall be sought against Defendant, Marla

Carmen Baylon."  (*Id.*) at 7.  In their answer on September 23, 2011, the Baylons alleged as

affirmative defenses to the foreclosure action that Wells Fargo violated the FDCPA and UPA

and engaged in tortious debt collection.  (Doc. 120) Ex. F at 5.

The Baylons filed their Complaint in the present case on January 18, 2012, seeking relief

for violations of the FDCPA and UPA and for tortious debt collection.  (Doc. 1.)  The Baylons

allege that both Wells Fargo and McCarthy are "debt collectors" as defined in § 1692a(6) of the

FDCPA.  They contend that after Mr. Baylon went into default, Wells Fargo sent monthly billing

statements demanding payment of the debt, telephoned the Baylons—sometimes several times a

day—and demanded payment of the debt.  According to the Baylons, each time they spoke with

a Wells Fargo representative, they informed the company that the debt was discharged in

bankruptcy.  The Baylons also sent letters to Wells Fargo stating that they had an attorney and

4

that the debt had been discharged; yet the calls continued.  The Baylons allege that McCarthy, on behalf of Wells Fargo, wrongfully demanded by letter payment of $37,145.82 and improperly requested a deficiency judgment in the foreclosure action.

On March 22, 2012, the Baylons and Wells Fargo agreed to a Stipulated Judgment as to the foreclosure complaint, which the state court entered on April 3, 2012.  (Doc. 120) Ex. C.  The Stipulated Judgment includes the following provision: "No deficiency or monetary judgment will be sought against Defendants Baylon, due to the Chapter 7 Bankruptcy filed August 26, 2009 . . . ."  (*Id.*) at 4.

On October 30, 2012, McCarthy made an Offer of Judgment to the Baylons in the amount of $10,000.  (Doc. 102) Ex. G.  The Baylons rejected the Offer of Judgment.

*B. Discussion*

*1. Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[1] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc.*, 912 F.2d at 1241. The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-

---

[1]Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

moving party may not avoid summary judgment by resting upon the mere allegations or denials
of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

    2. *Wells Fargo's Motion for Summary Judgment Asserting, Inter Alia, Lack of Subject Matter*

      *Jurisdiction* (Doc. 120)

        The Court first addresses the Baylons' federal claims pursuant to the FDCPA.  The

purpose of the FDCPA is

> to eliminate abusive debt collection practices by debt collectors, to insure that
> those debt collectors who refrain from using debt collection practices are not
> competitively disadvantaged, and to promote consistent State action to protect
> consumers against debt collection abuses.

15 U.S.C. § 1692(e).

        A prima facie case for violation of the FDCPA requires a plaintiff to show four elements:

> (1) the plaintiff is any natural person who is harmed by violations of the
> FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§
> 1692a(3), 1692c(d) for purposes of a cause of action pursuant to 15
> U.S.C.A.  1692c or 15 U.S.C.A.  1692e(11);
>
> (2) the "debt" arises out of a transaction entered primarily for personal,
> family, or household purposes; 15 U.S.C.A. § 1692a(5);
>
> (3) the defendant collecting the debt is a "debt collector" within the
> meaning of 15 U.S.C.A. § 1692a(6); and
>
> (4) the defendant has violated, by act or omission, a provision of the
> FDCPA, 15 U.S.C.A. § 1692a; 15 U.S.C.A. § 1692k.

*Duncan v. Citibank (S.D.), N.A.*, No. CIV 06-246 JB/KBM, 2006 WL 4063023, at *5 (D.N.M.

June 30, 2006) (quoting 29 CAUSES OF ACTION 2d 1 § 49 (2005)).

        With respect to the Baylons' FDCPA claims against Wells Fargo, Wells Fargo contends

that these claims fail because "(i) they are barred by *res judicata*, having been fully and finally

resolved by way of a stipulated judgment in a prior foreclosure action; and (ii) the FDCPA claim

fails because Wells Fargo is not a 'debt collector' as defined under the law."  (Doc. 121) at 1.

Because a prima facie FDCPA showing requires that Wells Fargo is a "debt collector" as defined by the statute, the Court addresses the latter argument first.

Wells Fargo argues that it is not subject to the FDCPA because it is not a debt collector since it was servicing its own debt, the Note was not in default at the time Wells Fargo acquired it, and the Stipulated Judgment identified Wells Fargo as a "holder in due course," meaning that the holder of the Note "took the instrument . . . without notice that the instrument is overdue." (Doc. 121) at 13.

The Baylons counter that Wells Fargo obtained the Note when it was in default. (Doc. 133) at 6. Specifically, the Baylons point out that when Wells Fargo obtained the Note on September 10, 2007, Mr. Baylon had not yet paid the September mortgage payment, due September 1, 2007. (*See id.*) Ex. B. They assert, citing call notes, that Accredited Home Lenders placed several calls to the Baylons to discuss their default and sent a ten-day notice of default on September 10, 2007. (*See id.*) Ex. C. The Baylons also contend that Wells Fargo is a debt collector because it regularly collects debts. (*Id.*) at 7 (citing *Oppong v. First Union Mortg. Corp.*, 215 F. App'x 114, 119 (3d Cir. 2007)). Finally, the Baylons argue that the fact that Wells Fargo was a "holder in due course" does not have a conclusive effect on Wells Fargo's status as a debt collector under the FDCPA because notice of whether an account is in default is not required of a "debt collector."

Wells Fargo replies that the Baylons' focus on the default status of the Note on the date it was assigned to Wells Fargo is misplaced. Rather, Wells Fargo argues that the relevant question is whether Wells Fargo was acting on its own behalf or as a third party for the purpose of collecting a debt owed to another. Wells Fargo asserts that it was acting as a "creditor" rather than a "debt collector" because it was trying to collect a debt owed to itself. Further, Wells

Fargo argues that whether the Note was in default is irrelevant because Wells Fargo was not collecting or attempting to collect a debt on behalf of another.  In addition, Wells Fargo notes that it continued to accept payments, including many late payments, from the Baylons until the Baylons stopped paying altogether in May 2009.  Finally, Wells Fargo points out that the call notes cited by the Baylons do not establish that the purpose of the calls or the ten-day notice was to inform the Baylons that they were in default.

The FDCPA defines a "debt collector" as

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.  For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6).

The FDCPA defines a "creditor" as

any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4).

The Baylons have made no allegations that Wells Fargo's principal purpose of business is

debt collection, eliminating the first means of qualifying as a debt collector.  As to the second

means of qualifying as a debt collector, the Baylons alleged in their Complaint that Wells Fargo

is a debt collector because it "regularly collects or attempts to collect debts owed or due or

asserted to be owed or due another."  (Doc. 1) at 2.  Yet the Baylons failed to provide any factual

allegations to support this conclusory proposition.  Accordingly, this Court concludes that the

Baylons have failed to adequately allege that Wells Fargo is a debt collector under the second

means of qualification under the FDCPA.  *See Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d

1204, 1209 (9th Cir. 2013) ("The complaint makes no factual allegations from which we could

plausibly infer that Wells Fargo regularly collects debts owed to someone other than Wells

Fargo."); *O'Connor v. Wells Fargo, N.A.*, NO. C-14-00211 DMR, 2014 WL 4802994, at *3

(N.D. Cal. Sept. 26, 2014) (upublished) ("The new allegations in the [amended complaint] do not

suffice to show that Wells Fargo is a debt collector.  Plaintiff alleges that Wells Fargo 'regularly

attempts to collect debts alleged to be due to another, meets the definition of debt collector under

the FDCPA and is not a creditor or a lender.'  These allegations are conclusory."); *Deplae v.

Reg'l Acceptance Corp.*, No. 3:09-CV-227, 2010 WL 2270785, at *3 (E.D. Tenn. June 3, 2010)

(unpublished) ("[P]laintiff failed to allege facts regarding the regularity in which defendant

collected debts . . . . As the Supreme Court stated in *Ashcroft v. Iqbal*, a pleading that offers

'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not

do.' . . . In this case, plaintiff tracked the language of the statute in an attempt to show that

defendant is a 'debt collector.' This is exactly what the Supreme Court warned against in

*Iqba[l]*.").

        The Baylons' citation to *Oppong* for the proposition that Wells Fargo regularly collects

debts of another is unpersuasive.  As discussed in *Schlegel*, "*Oppong* fails to differentiate

between debts 'owed to another' and debts originally owed to another but now owed to Wells Fargo."  720 F.3d at 1210.

Given that the Baylons failed to establish the two primary means of demonstrating that one is a debt collector, the Court next examines the exclusion in subsection (F) briefed by the parties.  While the Baylons focus on the question of whether the Note was in default at the time Wells Fargo acquired it, Wells Fargo properly notes that this is not the only necessary question.  Rather, in order for a person collecting or attempting to collect a debt that is in default at the time it is obtained by that person to be a "debt collector," that person must be collecting or attempting to collect a debt that is "owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6)(F);  *Schlegel v. Wells Fargo, N.A.*, 799 F. Supp. 2d 1100, 1105 (N.D. Cal. 2011), *aff'd in part, rev'd in part on other grounds*, 720 F.3d 1204 (9th Cir. 2013).  ("[J]ust because the statutory definition of debt collector excludes those who collect debts for another if such debts were not assigned in default, this does not mean that an entity collecting debts assigned in default is a debt collector.  The operative language missing from Plaintiffs' interpretation is 'for another.'").  As previously discussed, the Baylons have failed to show that Wells Fargo was collecting a debt for another.

Courts have specifically found that original mortgagees, their assignees, and loan servicers do not qualify as debt collectors under the FDCPA.  *See, e.g.*, *Vieira v. Prospect Mortg., LLC*, No. SACV 11-1780 AG JPRX, 2012 WL 3356947, at *5 (C.D. Cal. July 9, 2012) (unpublished) ("Originators of loans secured by real property and their assignees—like U.S. Bank in this case—are not debt collectors, and therefore are not subject to the FDCPA. . . . Nor do loan servicers—like Chase or WaMu in this case—qualify as debt collectors under the FDCPA."); *see also Locke v. Wells Fargo Home Mortg.*, No. 10-60286-CIV, 2010 WL 4941456,

at *2 (S.D. Fla. Nov. 30, 2010) (unpublished) ("The Plaintiff has failed to show that Wells Fargo is a 'debt collector' within the meaning of the FDCPA with respect to the mortgage loan at issue. . . . Wells Fargo is the Plaintiff's mortgage servicer and original creditor on the mortgage loan. . . . Since Wells Fargo was the mortgage company servicing the Plaintiff's mortgage, it cannot be liable as a 'debt collector' under section 1692.").  As an assignee of the mortgage and a loan servicer, Wells Fargo does not qualify as a debt collector under the FDCPA.

While this Court acknowledges that 350 calls from Wells Fargo in twelve months taken as true is beyond the pale, the FDCPA claim here fails.  Wells Fargo does not qualify as a debt collector under the FDCPA.  Therefore, the Court grants summary judgment in favor of Wells Fargo with respect to the Baylons' FDCPA claims.  As a result, the Court need not reach Wells Fargo's "holder in due course" or *res judicata* arguments.  The Court dismisses the FDCPA claims against Wells Fargo with prejudice.

*3. McCarthy's Motion for Summary Judgment* (Doc. 101)

McCarthy argues that it is entitled to summary judgment with regard to the claims on behalf of Ms. Baylon because it took no collection actions against her.  McCarthy points out that the reinstatement letter was addressed to Mr. Baylon alone, and the Foreclosure Complaint specifically stated that "[n]o deficiency shall be sought against Defendant, Marla [sic] Carmen Baylon."  (Doc. 101) at 4 (citing Doc. 102) Ex. A at 6.

With respect to the FDCPA claims on behalf of Mr. Baylon, McCarthy argues that such claims are barred by *res judicata* and collateral estoppel, that McCarthy had no knowledge of the Baylons' bankruptcy and made a bona fide error by including a deficiency provision in the Foreclosure Complaint, and that the Baylons' rejection of McCarthy's Offer of Judgment made Mr. Baylon's claims moot.  McCarthy also argues that Mr. Baylon's UPA and tortious debt

11

collection claims should be dismissed.

The Baylons counter that the Court should deny the motion due to bad faith by McCarthy in the discovery process.  Further, the Baylons contend that the FDCPA is a strict liability statute, so knowledge or intent is irrelevant.  The Baylons further contend that McCarthy pursued payment of their discharged debt by making false and misleading statements, both through the reinstatement letter and the Foreclosure Complaint.  As to Ms. Baylon, the Baylons argue that she is entitled to damages because she had an interest in the Baylons' community property. (Doc. 118) at 14.  They also claim that McCarthy's Offer of Judgment did not provide for full compensation, that their claims are not barred by *res judicata*, and that McCarthy failed to establish a bona fide error.  The Baylons state that they will ask the Court or jury to find that "McCarthy is a debt collector; McCarthy knew, or should have known, that debt had been discharged in bankruptcy; McCarthy knowingly made a false representation; McCarthy intentionally pursued the Baylons for a debt that they do not owe; McCarthy's actions were reckless and willful; and McCarthy's action caused the Baylons' damages."  (Doc. 118) at 22.

McCarthy replies that the Baylons' argument about Ms. Baylon's community property is without merit because "it is speculative about what Wells Fargo may or may not have done, or whether a deficiency even existed."  (Doc. 134) at 9.  They also state that they provided the reinstatement letter to Mr. Baylon at Wells Fargo's request and that the letter was not sent for collection purposes.  Further, McCarthy argues that as soon as it learned of the bankruptcy, it ceased any efforts to pursue a deficiency judgment against Mr. Baylon—if there would have been a deficiency at all.  McCarthy asserts that they did not pursue a deficiency aside from placing the contested language in the Foreclosure Complaint.   Finally, McCarthy reasserts its *res judicata* argument, contends that the Baylons failed to demonstrate that their actual damages

exceeded the Offer of Judgment, and counters that it did not engage in any bad faith with regard to discovery.

While the briefing does not concentrate on whether McCarthy is a debt collector under the FDCPA or whether bringing a foreclosure action can constitute a violation of the FDCPA, this Court brings its initial focus to these prima facie elements of an FDCPA claim.  The Baylons were on notice that McCarthy has to be a debt collector to be liable under the FDCPA, (Doc. 118) at 21, and that they would have to state a claim for actions by McCarthy that constituted violations of the FDCPA.  Accordingly, "a sua sponte order of summary judgment may be appropriate if 'the losing party was on notice that she had to come forward with all of her evidence.'" *Ward v. Utah*, 398 F.3d 1239, 1245 (10th Cir. 2005) (quoting *Celotex Corp.* 477 U.S. at 326).

The Baylons do not allege that McCarthy's principal purpose of business is the collection of debts.  Instead, they do argue that "McCarthy regularly collects or attempts to collect debts owed or due or asserted to be owed or due another."  (Doc. 1) at 2.  As with Wells Fargo, the Baylons fail to support this proposition with factual allegations.  Nor do the Baylons allege that McCarthy is, for purposes of section 1692f(6), a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).

Even assuming McCarthy could be a debt collector under the FDCPA, the Court examines the actions taken by McCarthy that the Baylons allege constitute improper debt collection activity.  The first action consisted of McCarthy sending a reinstatement letter to the Baylons for the Note.  (Doc. 102) Ex. E.  Upon review of the content of the letter, this Court finds that the letter makes no demand for payment.  Rather, the letter simply provides the

reinstatement amount, purportedly requested by Mr. Baylon.  Construing the facts in the light most favorable to the Baylons such that Mr. Baylon did not request a reinstatement amount for the Note, the letter itself still does no more than advise Mr. Baylon of the amount he would need to pay to save his home from the foreclosure process.  The Court concludes that the reinstatement letter did not constitute debt collection activity and therefore does not fit within the scope of the FDCPA.

The second activity consisted of McCarthy filing the Foreclosure Complaint with a line calling for a deficiency judgment if the proceeds from the foreclosure sale did not cover the total remaining debt.  The relevant question is whether such a filing could constitute a violation within the scope of the FDCPA.  The question can be framed as follows:

> The basic dispute is whether mortgage foreclosures constitute mere enforcement of a security interest by the lender, in which case they would appear to fall outside the scope of the Act, or whether foreclosures are an attempt to collect the underlying monetary debt, in which case they would fall within the scope of the act.

*Rousseau v. Bank of New York*, No. 08-CV-00205-PAB-BNB, 2009 WL 3162153, at *7 (D. Colo. Sept. 29, 2009) (unpublished) (citations omitted).  Most courts that have addressed this issue have determined that a mortgage foreclosure does not constitute debt collection under the FDCPA.  *See, e.g.*, *Derisme v. Hunt Leibert Jacobson, P.C.*, 880 F. Supp. 2d 339, 363 (D. Conn. 2012) (citations omitted).  Yet "several recent decisions from courts in [the Tenth C]ircuit have noted the difference between cases involving non-judicial foreclosures, in which FDCPA claims are often disallowed, and cases involving judicial foreclosures, in which the claims are permitted." *Rousseau*, 2009 WL 3162153, at *8.  "[I]n contrast to a foreclosure that is only against the property, where there is some attempt to collect money in addition to the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to the money

14

collection." *Id.* (citation omitted).

In *Derisme*, a case factually similar to the present case, the court found that the defendant law firm only attempted to enforce its client's security interest rather than collect a debt, even where the foreclosure complaint included a claim for a deficiency judgment. *Derisme*, 880 F. Supp. 2d at 361 (citing *Rousseau*).  The firm had not sought to enforce a money judgment by motion, as required by Connecticut law. *Id.* at 361.

While New Mexico law does not explicitly call for a separate motion to enforce a monetary judgment in a foreclosure action, there are distinct parallels between *Derisme* and the present case.  In both cases, the foreclosure complaints contained a request for a deficiency judgment, yet in neither case did the representative law firm pursue that deficiency judgment beyond the initial pleading phase.  In the present case, the Stipulated Judgment eliminated any lingering questions of whether McCarthy, on behalf of Wells Fargo, would pursue a deficiency judgment. (Doc. 102) Ex. B.  The present case is more akin to what occurs in a non-judicial foreclosure case, brought only to enforce a security interest, as opposed to a judicial foreclosure case in which the lender pursues a deficiency judgment.

Even assuming that McCarthy's Foreclosure Complaint and a plea for a deficiency judgment constituted debt collection activity, the next question is whether a reasonable jury could find that such an action was an abusive debt collection tactic in violation of the FDCPA. *See Blehm v. Jacobs*, 702 F.3d 1193, 1202-03 (10th Cir. 2012) ("[A] court may grant summary judgment for the defendant if the protectable expression in the copyrighted work and the allegedly infringing work is 'so dissimilar . . . that no reasonable jury could find for the plaintiff on the question of substantial similarity.'").  Given the purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors," the Court finds that no reasonable jury

could find that the filing of a foreclosure complaint with a deficiency judgment provision, followed by a Stipulated Judgment clarifying that no deficiency judgment would be pursued, constitutes an abusive debt collection practice under the FDCPA.

For the foregoing reasons, the Court grants summary judgment in favor of McCarthy with respect to the Baylons' FDCPA claims.  Accordingly, the FDCPA claims against McCarthy are dismissed with prejudice.  The Court need not reach the remaining arguments addressed in the briefing pursuant to McCarthy's motion.

4. *The Baylons' Motion for Leave to File a Surreply* (Doc. 149)

The Baylons request leave to file a surreply based on allegedly new arguments in Wells Fargo's reply regarding Wells Fargo's *res judicata* argument.  Because this Court resolved the motion for summary judgment on other grounds, the motion for leave to file a surreply is denied as moot.

5. *State Claims*

Parts of the first two motions already addressed and the entirety of the remaining three motions deal with the Baylons' UPA and tortious debt collection claims under New Mexico state law.  (*See* Docs. 208, 210, 212.)

Having determined to grant summary judgment in favor of Defendants on the FDCPA claims, the Baylons are left with only the UPA and tortious debt collection claims.  Under 28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction."  The Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of [supplemental] jurisdiction. . . ."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010).

"Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, the interests of judicial economy, convenience, fairness, and comity would not be served by retaining supplemental jurisdiction over the UPA and tortious debt collection claims. *Id.* Taking into consideration those factors, and following Tenth Circuit precedent, the Court declines to exercise supplemental jurisdiction over the Baylons' UPA and tortious debt collection claims. Consequently, the Baylons must pursue such claims in state court.

IT IS ORDERED that

1) Wells Fargo's Motion for Summary Judgment Asserting, Inter Alia, Lack of Subject Matter Jurisdiction (Doc. 120) is granted with respect to the Baylons' FDCPA claims;

2) McCarthy's Motion for Summary Judgment (Doc. 101) is granted with respect to the Baylons' FDCPA claims;

3) the FDCPA claims are dismissed with prejudice;

4) the Baylons' Motion for Leave to File a Surreply (Doc. 149) is denied as moot;

5) the Court declines to exercise supplemental jurisdiction over the state UPA and tortious debt collection claims;

6) Wells Fargo's Motion for Summary Judgment on Plaintiffs' Claims for Tortious Debt Collection and Violation of the UPA (Doc. 208), the Baylons' Motion for Partial Summary Judgment Against McCarthy (Doc. 210), and the Baylons' Motion for Partial Summary Judgment Against Wells Fargo (Doc. 212), are denied; and

7) the UPA and tortious debt collection claims are dismissed without prejudice.

UNITED STATES DISTRICT JUDGE